IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KELLY CRAWFORD, IN HIS CAPACITY AS RECEVIER,** | § § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. **3:21-CV-2181-L** |
| **DAVID LEEDEN,** *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

For the reasons that follow, the court *sua sponte* **dismisses** this action for lack of subject matter jurisdiction.

**I.    Background**

On September 13, 2021, Kelly Crawford ("Mr. Crawford" or "the Receiver") brought this action against the following "Broker Defendants": David Bleeden; Bearhunter, LLC; Xan, LLC; Daniel Isaac Halimi; Halimi Group, LLC; Athena Hunter; TPH Boss, LLC; Randall Kohl; The Voice, Inc.; Benjamin Lee; Mettabel Inc.; Deric Scott Ned; Poor Trap, Inc.; Deep State Marketing, Inc.; Michael Peralta; MPERA Corp.; Sean Reza, also known as Thomas Reza; Amerigold, Inc.; Kyle D. Sanna; Hurricane Holdings, Inc.; LTK Marketing, LLC; Christopher Stephan; Eco Blue Inc.; Walter Vera; Verastan Group, LLC; Midwood Capital; Richard Joe Dougherty; Rich Dough, Inc.; Matthew Levitt; Gooner Enterprises, Inc.; James Flicek; Joshua Ferdman; Ferdman Group, Inc.; Andrew Eilers; Andrew J. Eilers Consulting, Inc.; Alexander Flamer; 9TH Level Marketing, Inc.; David Wolan; Harper Metals Group, LLC; Brock Bowers, also doing business as BA Bowers LLC; TOTM Production Group, LLC; Philip Levy; and IQ Capital Advisors, Inc.

In his Original Complaint, the Receiver asserts the following causes of action against the third-party Broker Defendants, who are not parties to the Underlying Action, to recover approximately $12 million in commissions, unearned compensation, and sales prizes that were allegedly fraudulently transferred from the Receivership Entities[1] to the Broker Defendants *before* the Underlying Action was filed: (Counts 1 and 2) voidable/fraudulent transfers (actual and constructive fraud), pursuant to the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code § 3439, "or any or any other applicable State's adoption"[2] of the UFTA; (Count 3) unjust enrichment/constructive trust; and (Count 4) money had and received.

Mr. Crawford brought this action in his capacity as the appointed Receiver in Civil Action No. 3:20-CV-2910-L, *Commodity Futures Trading Commission, et al. v. TMTE, Inc. a/k/a Metals.Com, et al.* ("Underlying Action"), which is pending before the undersigned. The Underlying Action was filed on September 22, 2020, by the Commodity Futures Trading Commission ("CFTC") and thirty-five other plaintiffs consisting of states and state entities (collectively, "Plaintiffs") against TMTE, Inc., d/b/a Metals.com, Chase Metals, LLC, Chase Metals, Inc., (collectively, "Metals"); Barrick Capital, Inc. ("Barrick"); and their principals, Lucas

---

[1] The Receiver's Complaint defines "Receivership Entities" as the entity Defendants in the Underlying Action, as well as the entities listed in the court's March 22, 2021 Order (Doc. 230) granting the Receiver's motion to include certain affiliated entities that were owned or controlled by one or more Defendant as of September 22, 2020, within the definition of "Receivership Defendants":

> TMTE, Inc., a/k/a Metals.Com, Chase Metals, Inc., Chase Metals, LLC (collectively the "Metals Receivership Defendants"), and Barrick Capital, Inc., as well all other Receivership Entities described within the scope of, or identified in the Receivership Order issued in Civil Action No. 3:20-CV-2910-L and any supplemental or amending orders, which include . . . Administrative Account Services, LLC, Amerivise, LLC, Best New, Inc., Delaware Wholesale, Inc., Revo, LLC, Merrill Gold, LLC, Newmont Admin. Inc., Reagan Financial Services, Inc., Resource Financial Services, Inc., First American Estate & Trust, First American Savings, Inc., Retirement Insider, LLC, USA Accounts, Inc., USA Marketing, Inc., TX Admin, Inc., and Relief Defendant Tower Equity, LLC.

Pl.'s Compl. 2 n.1.

[2] *Id.* at 28.

**Memorandum Opinion and Order – Page 2**

Asher ("Asher"), and Simon Batashvili ("Batashvili") (collectively, "Defendants"). Plaintiffs in that action allege: that "Defendants have engaged and continue to engage in a fraudulent scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion ('Precious Metals Bullion')"; that "Batashvili and Asher used both Metals and Barrick to perpetuate the fraudulent scheme"; that "Defendants targeted a vulnerable population of mostly elderly or retirement-aged persons with little experience in Precious Metals Bullion; and that "Defendants deceived investors into purchasing Precious Metals Bullion at prices averaging from 100% to over 300% over the base melt value or spot price of the Precious Metals Bullion ('Prevailing Market Price'); and, as a result, investors, many of whom were between the ages of 60 and 90, were "swindled . . . out of their retirement funds by charging them fraudulent prices to purchase Precious Metals Bullion." Pls' Compl. ¶¶ 1-4.

Plaintiffs in the Underlying Action assert claims for alleged violations of the federal Commodity Exchange Act ("CEA"), CFTC regulations, and various state statutes for securities, commodities, and investor fraud; deceptive trade practices; and other statutory violations. On September 22, 2020, Plaintiff filed an Emergency Motion for *Ex Parte* Statutory Restraining Order, Appointment of a [Temporary] Receiver, and Other Equitable Relief (Doc. 4), which was granted by United States District Judge David C. Godbey on the same date (Doc. 16). The order entered by Judge Godbey is frequently referred to as the "SRO." Subsequently Plaintiffs moved for entry of two Consent Orders of Preliminary Injunction—(1) a Consent Order of Preliminary Injunction as to Asher and Batashvili; and (2) a Consent Order of Preliminary Injunction as to the remaining entity Defendants. On October 14, 2020, the undersigned granted Plaintiffs' motion and entered the proposed Consent Orders submitted by Plaintiffs because the Consent Orders indicated that all parties to the Underlying Action consented to their entry. *See* Docs. 164, 165.

The Receiver's authority and duties in the Underlying Action are primarily set forth in the SRO. The Consent Orders "incorporated in full" and granted to Mr. Crawford all of the "directions, authorizations, duties, and powers of the Temporary Receiver under the SRO." Doc. 164, ¶ 29; Doc. 165, ¶ 30.

The Receiver alleges that the claims in this action are brought on behalf and for the benefit of defrauded creditors and investors of the Receivership Entities "for whom the Receiver is authorized to assert these claims." Pl.'s Compl. ¶¶ 110, 122, 124; *see also* Pl.'s Compl. ¶ 1 ("Standing in the Receivership Entities' creditors' shoes for purposes of the claims asse1ied below and for the benefit of those defrauded creditors, including at least 1,300 elderly victims, the Receiver seeks to recover the funds fraudulently transferred to the Broker Defendants."). For relief, the Receiver requests that the court "order disgorgement or alternatively award the Receiver judgment against the Broker Defendants in an amount to be determined through discovery, plus prejudgment and post judgment interest, attorney's fees, expenses, and court costs." *Id.* at 30.

For the reasons that follow, the court determines that subject matter jurisdiction based on federal question or diversity jurisdiction is lacking, and exercising supplemental or ancillary jurisdiction over the Receiver's claims against the third-party Broker Defendants in this action is not appropriate.

**II.    Subject Matter Jurisdiction in Actions Filed in Federal Court**

A federal court has subject matter jurisdiction over civil cases originally filed in federal court "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.* A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case, *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), and it may raise the issue *sua sponte*. *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005).

**III.     Discussion**

    **A.     Federal Question and Diversity Jurisdiction**

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, which is commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331. Whether an action "arises under" federal law and creates federal question jurisdiction over a case removed from state to federal court, or one originally filed in such court, ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted).

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same

citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted) "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citation omitted). Failure to allege adequately the basis of diversity "mandates . . . dismissal of the action." *Stafford v. Mobil Oil Corp*., 945 F.2d 803, 805 (5th Cir. 1991).

The Civil Cover Sheet (Doc. 1-1) filed by the Receiver indicates that the basis for jurisdiction in this action is federal question jurisdiction, and he alleges in his Complaint that the court has "subject matter jurisdiction over the Receiver's claims pursuant to 28 U.S.C. § 1331 because this action is related to and arises out of alleged violations of the Commodities Exchange Act." Pl.'s Compl. 11. Plaintiffs in the Underlying Action have asserted federal claims for alleged violations of the CEA. All claims asserted by the Recevier in this action, however, are state law claims. Thus, unlike the Underlying Action, federal question jurisdiction will not support the court's exercise of subject matter jurisdiction *over this action*. Further, the Receiver does not allege that subject matter jurisdiction exists based on diversity of citizenship, and his allegations regarding the numerous parties in this case are insufficient to support jurisdiction based on diversity of citizenship.

B.  **Supplemental Jurisdiction**

Alternatively, or in addition, the Receiver alleges that, "in the Receivership Order, this [c]ourt assumed exclusive jurisdiction to adjudicate claims regarding the assets that are the basis of this Complaint, and accordingly, pursuant to 28 U.S.C. § 1367[,] this [c]ourt possesses supplemental subject matter jurisdiction over the Receiver's claims." *Id.* Section 1367(a) "'supplemental' jurisdiction is a codification of one type of 'ancillary' jurisdiction that permits 'disposition by a single court of claims that are, in varying respects and degrees, factually

interdependent.'" *Zimmerman v. City of Austin, Tex.*, 969 F.3d 564, 567 (5th Cir. 2020) (citations omitted). Federal courts that have original jurisdiction over a case also have broad authority to hear related state law claims under § 1367(a), which provides: "[I]f any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III[.]" *Id.* Thus, supplemental jurisdiction does not operate as an independent basis for the court to assert jurisdiction over related state law claims, and § 1367 does not come into play unless the court has original jurisdiction over an action, that is, an independent basis for exercising subject matter jurisdiction. Even in cases in which complete diversity of citizenship exists, the Fifth Circuit has explained that § 1367(b) imposes "limits . . . on the use of supplemental jurisdiction in diversity cases so that it will not defeat the established rule of complete diversity." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) (citation omitted).

In the Underlying Action, Plaintiffs have alleged federal securities violations as well as related state law claims, so the court has original federal question jurisdiction and supplemental jurisdiction over the state law claims. The same is not true in this case. As explained, no violation of federal law or the Constitution is alleged; rather, the Receiver has alleged only state law claims.

Moreover, the plain language of § 1367 refers to claims within one action, not separate actions. Thus, the statute does not provide supplemental jurisdiction for a separate but related case over which the court would not have original jurisdiction. Accordingly, the court's original jurisdiction in the Underlying Action does not support the exercise of supplemental jurisdiction over the state law claims in this separate action brought by the Receiver.

### C.     Ancillary Jurisdiction

"A second type of ancillary jurisdiction is one that 'enable[s] a court to function successfully,' *i.e.*, 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Zimmerman*, 969 F.3d at 568 (citations omitted). Section 1367 does not apply to this type of ancillary jurisdiction, which is not codified and frequently referred to as "ancillary enforcement jurisdiction." *Id.*  A court's exercise of jurisdiction is generally referred to as ancillary jurisdiction when state law claims are filed in a separate action but alleged to be related to: (1) the claims in the original federal action from which jurisdiction is said to flow; or (2) the enforcement of court orders in the original federal action.  For example, in *Peacock v. Thomas*, 516 U.S. 349, 357 (1996), the Supreme Court approved the exercise of ancillary jurisdiction over proceedings "involving third parties to assist in the protection and enforcement of federal judgments— including . . . prejudgment avoidance of fraudulent conveyances") (citing *Dewey v. West Fairmont Gas Coal Co.*, 123 U.S. 329, 332-33 179 (1887)).  Additionally, in *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573 (1899), the Supreme Court explained that, as long as an action commenced by a court appointed receiver seeks "to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the . . . court of the United States is concerned." *Id.* at 577 (collecting cases).  This is not to say, though, that the mere appointment of a receiver is sufficient to support ancillary jurisdiction over claims by a receiver in a separate action absent an independent ground for subject matter jurisdiction. *Id.* at 578-80 (explaining that "the mere order of a federal court . . . appointing a receiver . . . [does] not . . . enable[] the receiver to invoke federal jurisdiction . . . independently

of the ground of jurisdiction of the [original] suit" when the cause of action asserted by the receiver does not "originate [from] or depend on the order of appointment.").

The Supreme Court has also cautioned federal courts "against the exercise of jurisdiction over proceedings that are entirely new and original or where the relief [sought is] of a different kind or on a different principle than that of the prior decree." *Peacock*, 516 U.S. at 358 (citations and internal quotation marks omitted). This is because "[a]ncillary enforcement jurisdiction is, at its core, a creature of necessity." *Id.* Even if the Receiver meant to rely on this type of ancillary jurisdiction, the court determines that it is not a basis for jurisdiction in this case.

Here, the Receiver was appointed to marshal and preserve "assets of the "Receivership Estate"[3] for purposes of preserving the status quo in the Underlying Action pending resolution of the claims asserted and to create a fund from which the allegedly defrauded investors or clients of Defendants might be reimbursed *if* Defendants are found liable for the conduct alleged. In this regard, the SRO explains that the assets that fall within the "Receivership Estate" and subject to the Receiver's authority are those that are directly or indirectly owed by Defendants, their affiliates, or subsidiaries:

> 27. Kelly Crawford, previously appointed by the Court as Temporary Receiver pursuant to the SRO, is appointed Receiver with the full powers of an equity receiver for Defendants and Relief Defendant and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant (hereinafter referred to as the "Receivership Defendants"), and of all records, and all funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants, (hereinafter, the "Receivership Estate").

SRO ¶ 30 (emphasis added). The SRO also limits "assets affected by the [SRO]" to "*existing* assets as well as assets *acquired after the effective date of the [SRO]*." *Id*. ¶ 21 (emphasis added).

---

[3] SRO ¶¶ 30-33.

**Memorandum Opinion and Order – Page 9**

As noted, the Receiver alleges that the court has jurisdiction because, "in the Receivership Order, this [c]ourt assumed exclusive jurisdiction to adjudicate claims regarding the assets that are the basis of this Complaint[.]" *Id.* "Receivership Order" as used in the Receiver's Complaint refers to the September 22, 2020 Order Granting Plaintiffs' Emergency *Ex Parte* Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief in the Underlying Action. Pl.'s Compl. ¶ 3. The Receivership Order is frequently referred to in the Underlying Action as the "Statutory Restraining Order" or "SRO." The court, however, does not interpret the SRO as authorizing the Receiver to bring this action against the third-party Broker Defendants.

As it pertains to filing suit, paragraph 31 of the SRO gives the Receiver authority to:

> b. **Take exclusive custody, control, and possession of the Receivership Estate, which includes** but is not limited to complete authority **to sue for**, collect, receive, and take possession of all goods, chattels, rights, credits, money, effects, land, leases, books, records, work papers, and records of accounts, including electronically-stored information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records **of the Receivership Defendants and customers or clients of any of Receivership Defendants' business activities whose interests are now held by, or under the direction, possession, custody, or control of, the Receivership Defendants;**
>
> . . .
>
> i. **Initiate**, defend, compromise, adjust, intervene in, dispose of, or become a party to **any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the assets of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order**;

SRO ¶ 31.b. & i. (emphasis added). Although the foregoing language in the SRO allows the Receiver to bring suit under certain circumstances, the court does not interpret this language as authorizing the Receiver's decision to file this action for a number of reasons.

First and foremost, the stated purpose of the SRO and Consent Orders is to "preserve the *status quo*" during the pendency of the Underlying Action until there has been a determination as

**Memorandum Opinion and Order – Page 10**

to the liability, if any, of the Defendants[4] in that case. To date, there has been no such determination. The court granted[5] the Receiver's motion to establish a claims and adjudication process to address claims by investors who claim a right to payment arising from investment of personal funds with any Receivership Defendant for the purchase of metals or as part of an investment program. No claims will be paid, however, unless and until the Defendants in the Underlying Action have been found liable for the wrongful conduct alleged.

Second, the third-party Broker Defendants in this case are not Defendants in the Underlying Action or subject to the receivership orders entered in that case. The SRO and Consent Orders preserve the status quo by prohibiting the Defendants in the Underlying Action from directly or indirectly dissipating assets owned or controlled by them through withdrawal, transfer, removal, and disposal. SRO ¶ 19. The assets affected by the SRO, however, are limited to *existing* assets and *assets acquired after the effective date of the SRO*, whereas the property in this action is not alleged to be currently held by or now under the direction, possession, custody, or control of any Receivership Defendant or Entity.

Instead, the Receiver alleges that the money at issue in this case was transferred *before* the Underlying Action was filed on September 22, 2020, and thus could not have been acquired after the SRO or Receivership Order was entered in the Underlying Action. Thus, while the action against the third-party Broker Defendants could enlarge the potential pool of funds available to pay investors, it will not "preserve or increase the value of the assets of the Receivership Estate" because assets alleged to have been transferred to the Broker Defendants before the Underlying Action was filed do not qualify as existing or after acquired assets of the Defendants in the

---

[4] The orders and filings in the Underlying Action distinguish between "Defendants" and "Relief Defendant." The court refers collectively to all Defendants in the Underlying Action as "Defendants."
[5] Doc. 227.

**Memorandum Opinion and Order – Page 11**

Underlying Action or assets that are currently owned directly or indirectly by the Defendants in the Underlying Action. Thus, any funds generated from this action cannot "increase the value" of the property or "assets of the Receivership Estate."

Accordingly, the court is not convinced that the filing of this action is "necessary and advisable to carry out the . . . Receiver's mandate under [the SRO]," which essentially is to preserve the status quo in the Underlying Action pending the resolution of the Plaintiffs' claims against the Defendants. Regardless of whether authorized by the receivership orders in the Underlying Action, the court also questions whether Mr. Crawford, in his capacity as the Receiver in the Underlying Action, has standing or is the appropriate party to assert such claims against the Broker Defendants. For all of these reasons, the court determines that it lacks subject matter jurisdiction over this action.

Because this is not a situation in which the jurisdictional defects can be cured, the court will *sua sponte* dismiss without prejudice the action without giving the Receiver an opportunity to amend his pleadings. The court's decision to dismiss this action is not a comment on the merits of any claim asserted this action or the Underlying Action. The court has some concerns about the way the Underlying Action is progressing, including whether the agreed upon SRO or Receivership Order is binding on certain entity Defendants. This is yet another reason for the court's decision to not exercise jurisdiction over this action, but it will reserve its comments in this regard for when it conducts a hearing on the motions pending in the Underlying Action.

### IV.   Conclusion

For the reasons explained, the court *sua sponte* **dismisses without prejudice** this action for lack of subject matter jurisdiction.

**It is so ordered** this 10th day of February, 2022.

Sam A. Lindsay
United States District Judge