IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **KELLY CRAWFORD, IN HIS CAPACITY AS RECEVIER,** § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. **3:21-CV-2181-L** |
| § | |
| **DAVID BLEEDEN,** *et al.*, § § | |
| Defendants. § § | |

## MEMORANDUM OPINION AND ORDER

For the reasons that follow, the court **vacates** its February 10, 2022 Memorandum Opinion and Order (Doc. 15) *sua sponte* dismissing this action for lack of subject matter jurisdiction and **directs** the clerk of court to **reinstate** this action.

**I.     Background**

On September 13, 2021, Kelly Crawford ("Mr. Crawford" or "the Receiver") brought this action against the following "Broker Defendants": David Bleeden; Bearhunter, LLC; Xan, LLC; Daniel Isaac Halimi; Halimi Group, LLC; Athena Hunter; TPH Boss, LLC; Randall Kohl; The Voice, Inc.; Benjamin Lee; Mettabel Inc.; Deric Scott Ned; Poor Trap, Inc.; Deep State Marketing, Inc.; Michael Peralta; MPERA Corp.; Sean Reza, also known as Thomas Reza; Amerigold, Inc.; Kyle D. Sanna; Hurricane Holdings, Inc.; LTK Marketing, LLC; Christopher Stephan; Eco Blue Inc.; Walter Vera; Verastan Group, LLC; Midwood Capital; Richard Joe Dougherty; Rich Dough, Inc.; Matthew Levitt; Gooner Enterprises, Inc.; James Flicek; Joshua Ferdman; Ferdman Group, Inc.; Andrew Eilers; Andrew J. Eilers Consulting, Inc.; Alexander Flamer; 9TH Level Marketing, Inc.; David Wolan; Harper Metals Group, LLC; Brock Bowers, also doing business as BA Bowers LLC; TOTM Production Group, LLC; Philip Levy; and IQ Capital Advisors, Inc.

In his Original Complaint, the Receiver asserts the following causes of action against the third-party Broker Defendants to recover approximately $12 million in commissions, unearned compensation, and sales prizes that were allegedly fraudulently transferred from the Receivership Entities[1] to the Broker Defendants before Civil Action No. 3:20-CV-2910-L, *Commodity Futures Trading Commission, et al. v. TMTE, Inc. a/k/a Metals.Com, et al*. (the "Underlying Action"), was filed: (Counts 1 and 2) voidable/fraudulent transfers (actual and constructive fraud), pursuant to the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code § 3439, "or any or any other applicable State's adoption"[2] of the UFTA; (Count 3) unjust enrichment/constructive trust; and (Count 4) money had and received.

Mr. Crawford brought this action in his capacity as the appointed Receiver in the Underlying Action, which is pending before the undersigned. The Underlying Action was filed on September 22, 2020, by the Commodity Futures Trading Commission ("CFTC") and thirty-five other plaintiffs consisting of states and state entities (collectively, "Plaintiffs") against TMTE, Inc., d/b/a Metals.com, Chase Metals, LLC, Chase Metals, Inc., (collectively, "Metals"); Barrick Capital, Inc. ("Barrick"); and their principals, Lucas Asher ("Asher"), and Simon Batashvili

---

[1] The Receiver's Complaint defines "Receivership Entities" as the entity Defendants in the Underlying Action, as well as the entities listed in the court's March 22, 2021 Order (Doc. 230) granting the Receiver's motion to include certain affiliated entities that were owned or controlled by one or more Defendant as of September 22, 2020, within the definition of "Receivership Defendants":

> TMTE, Inc., a/k/a Metals.Com, Chase Metals, Inc., Chase Metals, LLC (collectively the "Metals Receivership Defendants"), and Barrick Capital, Inc., as well all other Receivership Entities described within the scope of, or identified in the Receivership Order issued in Civil Action No. 3:20-CV-2910-L and any supplemental or amending orders, which include . . . Administrative Account Services, LLC, Amerivise, LLC, Best New, Inc., Delaware Wholesale, Inc., Revo, LLC, Merrill Gold, LLC, Newmont Admin. Inc., Reagan Financial Services, Inc., Resource Financial Services, Inc., First American Estate & Trust, First American Savings, Inc., Retirement Insider, LLC, USA Accounts, Inc., USA Marketing, Inc., TX Admin, Inc., and Relief Defendant Tower Equity, LLC.

Pl.'s Compl. 2 n.1.

[2] *Id.* at 28.

**Memorandum Opinion and Order – Page 2**

("Batashvili") (collectively, "Defendants"). Plaintiffs in that action allege: that "Defendants have engaged and continue to engage in a fraudulent scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion ('Precious Metals Bullion')"; that "Batashvili and Asher used both Metals and Barrick to perpetuate the fraudulent scheme"; that "Defendants targeted a vulnerable population of mostly elderly or retirement-aged persons with little experience in Precious Metals Bullion; and that "Defendants deceived investors into purchasing Precious Metals Bullion at prices averaging from 100% to over 300% over the base melt value or spot price of the Precious Metals Bullion ('Prevailing Market Price'); and, as a result, investors, many of whom were between the ages of 60 and 90, were "swindled . . . out of their retirement funds by charging them fraudulent prices to purchase Precious Metals Bullion." Pls.' Compl. ¶¶ 1-4.

Plaintiffs in the Underlying Action assert claims for alleged violations of the federal Commodity Exchange Act ("CEA"), CFTC regulations, and various state statutes for securities, commodities, and investor fraud; deceptive trade practices; and other statutory violations. On September 22, 2020, Plaintiffs filed an Emergency Motion for *Ex Parte* Statutory Restraining Order, Appointment of a [Temporary] Receiver, and Other Equitable Relief (Doc. 4), which was granted by United States District Judge David C. Godbey on the same date (Doc. 16). The order entered by Judge Godbey is frequently referred to as the "SRO." Subsequently Plaintiffs moved for entry of two Consent Orders of Preliminary Injunction—(1) a Consent Order of Preliminary Injunction as to Messrs. Asher and Batashvili; and (2) a Consent Order of Preliminary Injunction as to the remaining entity Defendants. On October 14, 2020, the undersigned granted Plaintiffs' motion and entered the proposed Consent Orders submitted by Plaintiffs. *See* Docs. 164, 165. The Receiver's authority and duties in the Underlying Action are primarily set forth in the SRO. The

Consent Orders "incorporated in full" and granted to Mr. Crawford all of the "directions, authorizations, duties, and powers of the Temporary Receiver under the SRO." Doc. 164, ¶ 29; Doc. 165, ¶ 30.

The Receiver alleges that the claims in this action are brought on behalf and for the benefit of defrauded creditors and investors of the Receivership Entities "for whom the Receiver is authorized to assert these claims." Pl.'s Compl. ¶¶ 110, 122, 124; *see also* Pl.'s Compl. ¶ 1 ("Standing in the Receivership Entities' creditors' shoes for purposes of the claims asserted below and for the benefit of those defrauded creditors, including at least 1,300 elderly victims, the Receiver seeks to recover the funds fraudulently transferred to the Broker Defendants."). For relief, the Receiver requests that the court "order disgorgement or alternatively award the Receiver judgment against the Broker Defendants in an amount to be determined through discovery, plus prejudgment and post judgment interest, attorney's fees, expenses, and court costs." *Id.* at 30.

On February 10, 2022, the court *sua sponte* dismissed this action for lack of subject matter jurisdiction. Mem. Op. & Order (Doc. 15). Specifically, the court concluded that "federal question jurisdiction will not support the court's exercise of subject matter jurisdiction . . . [and] the Receiver does not allege that subject matter jurisdiction exists based on diversity of citizenship, and his allegations regarding the numerous parties in this case are insufficient to support jurisdiction based on diversity of citizenship." *Id.* at 6. The court further determined that the exercise of ancillary jurisdiction was unsupported, as it was "not convinced that the filing of this action is necessary and advisable to carry out the . . . Receiver's mandate under the SRO." *Id.* at 12 (internal quotation marks omitted). Finally, the court questioned whether the Receiver had "standing or [was] the appropriate party to assert such claims against the Broker Defendants." *Id.*

After further review and study, and as a result of the court's increased familiarity with the Underlying Action and the scope of the Receiver's duties under the SRO (Doc. 16) and the Consent Orders of Preliminary Injunction (Docs. 164 and 165), the court concludes it is appropriate to exercise ancillary subject matter jurisdiction over this action.

## II.   Discussion

When a federal court appoints a receiver, it retains "ancillary subject matter jurisdiction" over "any suit [that] the receiver thereafter brings in the appointment court in order to execute his duties." *Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010) (citation omitted).[3] This proposition is well-established. *See Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899) ("When an action or suit is commenced by a receiver, appointed by a circuit court, to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the circuit court[.]"); *see also Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("[A] receiver may systematically use ancillary litigation against third-party defendants to gather the entity's assets."). The appointment court has "ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction." *Silette*, 608 F.3d at

---

[3] The Fifth Circuit recently summarized the "two different kinds of 'ancillary' subject-matter jurisdiction, the first of which is statute based and the second of which is common-law based." *Zimmerman v. City of Austin, Texas*, 969 F.3d 564, 567 (5th Cir. 2020). Supplemental jurisdiction under 28 U.S.C. § 1367(a) "is a codification of one type of ancillary jurisdiction that permits disposition by a single court of claims that are, in varying respects and degrees, factually interdependent." *Id.* (internal quotation marks and citations omitted). "A second type of ancillary jurisdiction is one that 'enable[s] a court to function successfully,' i.e., 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Id.* at 568 (quoting *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 n.1 (5th Cir. 2014)). This type of ancillary jurisdiction "is uncodified, but it remains a viable doctrine of ancillary jurisdiction and is often referred to as ancillary enforcement jurisdiction." *Id.* (internal quotation marks and citations omitted). "'This form of jurisdiction developed in case law as "ancillary" or "ancillary enforcement" jurisdiction. It seems clear that § 1367 does not apply to this form of jurisdiction.'" *Id.* (quoting 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523.2 (3d ed. 2002)). Proceedings in this action brought by the Receiver are supported by uncodified ancillary enforcement jurisdiction. *See, e.g., Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010).

278 (citation omitted). As the undersigned recognized in a previous opinion, "The Receiver need not establish an independent basis for federal subject matter jurisdiction in his lawsuit . . . . It is enough that the case arises out of and is brought in furtherance of the underlying receivership proceeding." *Quilling v. McDuff*, No. 06-CV-0959, 2006 WL 3026104, at *3 (N.D. Tex. Oct. 23, 2006) (Lindsay, J., accepting Findings and Recommendation).

The SRO provides the Receiver with "the full powers of an equity receiver," SRO ¶ 30, as well as specific enumerated powers. The equitable powers of a receiver necessarily include "the right to assert claims against third parties," including persons or entities who received assets traceable to the Receivership Estate. *SEC v. Stanford Int'l Bank*, 927 F.3d 830, 836 (5th Cir. 2019); *see also Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190-91 (5th Cir. 2013) (finding wide endorsement for proposition that a receiver "may recover assets or funds that the principal fraudulently diverted to third parties").

In addition, the court is persuaded by its closer review of the SRO (Doc. 16) and Consent Orders of Preliminary Injunction (Docs. 164 and 165) that the Receiver has standing to assert such claims against the Broker Defendants and that this case falls within the parameters of the Receiver's powers. The SRO "direct[s] and authorize[s]" the Receiver to "collect all funds owed to the Receivership Defendants," SRO ¶ 31(h), and to "[i]nitiate . . . any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the assets of the Receivership Estate." *Id.* ¶ 31(i). The SRO further provides that the has Receiver "complete authority to sue for, collect, receive, and take possession of all . . . money . . . of the Receivership Defendants." *Id.* ¶ 31(b) (emphasis added). In addition, the Receiver has the power to request the transfer of assets not just from the Defendants or Relief

Defendants, but also from "any other person who has possession, custody, or control of any of Defendants' or Relief Defendant's assets." *Id.* ¶ 20. Here, the Receiver alleged that he is seeking to increase the value of the Receivership Estate by recovering $12 million in funds that were fraudulently transferred to the Broker Defendants by the principals, and therefore rightfully owed to the Receivership Estate. *See* Pl.'s Compl. ¶¶ 1, 58, 124. Based on the SRO and Consent Orders of Preliminary Injunction, the court concludes that, contrary to its previous concerns, the Receiver has standing to bring this action.

### III. Conclusion

For the reasons herein explained, the court **vacates** its February 10, 2022 Memorandum Opinion and Order (Doc. 15) *sua sponte* dismissing this action for lack of subject matter jurisdiction and **directs** the clerk of court to **reinstate** it. In addition, the court **denies as moot** the Receiver's Motion for New Trial (Doc. 17) and **denies as moot** the Motion of Commodity Futures Trading Commission and 12 States for Leave to File a Brief, Amici Curiae, in Support of the Receiver's Motion for New Trial (Doc. 18).

**It is so ordered** this 12th day of May, 2022.

Sam A. Lindsay
United States District Judge