IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER FOR TMTE, INC. a/k/a METALS.COM, et al. | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:21-cv-02181-E |
| v. | § § | |
| DAVID BLEEDEN, et al., | § § | |
| Defendants. | § § § | |

## RECEIVER'S RESPONSE IN OPPOSITION TO DEFENDANTS DAVID BLEEDEN, BEARHUNTER, LLC, XAN, LLC, RANDALL KOHL, AND THE VOICE, INC.'S MOTION TO DISMISS

COMES NOW Plaintiff Kelly Crawford, in his capacity as Receiver for TMTE, Inc., a/k/a Metals.com, et al. ("Receiver" or "Plaintiff"), and files this his Receiver's Response in Opposition to the Defendants David Bleeden, Bearhunter, LLC, Xan, LLC, Randall Kohl, and the Voice, Inc.'s Motion to Dismiss (the "Response in Opposition"), and in support thereof, respectfully shows the Court as follows:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................Page iii

I.       FACTUAL SUMMARY .................................................................Page 1

II.      ARGUMENT AND AUTHORITIES ..............................................Page 2

     A.   This Court has Personal Jurisdiction Over Defendants.....................Page 2

         1.   Legal Standard Governing Rule 12(b)(2) Motions .....................Page 2

         2.   The Requirements of Section 754 Have Been Met ......................Page 4

     B.   The Receiver Adequately Pleaded Each Claim Alleged in the Complaint ........Page 5

         1.   Legal Standard for a Motion to  Dismiss Under Rule 12(b)(6)....................Page 5

         2.   The Receiver's claim for Actual Fraudulent Transfer
           (Count 1) is Plausible ...........................................................Page 6

            i.    The Legal Standard for Actual Fraudulent Transfer (Count I)
              is Rule 8(a)..................................................................Page 6

            ii.   The Receiver's Claim for Actual Fraudulent Transfer (Count I)
              Is Plausible Under 9(b) ...................................................Page 7

          3.   The Receiver States a Claim for Constructive Fraudulent Transfer
           (Count II).....................................................................Page 13

            i.    Rule 8(a) Controls Whether the Receiver Stated a Claim for
              Constructive Fraudulent Transfer (Count II) .......................Page 13

            ii.   The Receiver's Constructive Fraudulent Transfer Claim (Count II)
              Is Plausible Under Rule 8(a)..............................................Page 14

          4.   The Receiver States a Claim for Unjust Enrichment, Constructive Trust,
           And Money Had and Received (Count III and IV) .....................Page 15

     C.   If the Complaint is Deficient, the Court Should Grant Leave to Amend...........Page 17

III.     CONCLUSION AND REQUEST FOR RELIEF .................................Page 17

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Asarco, LLC v. Americas Mining Corp.*,
   396 B.R. 278 (S.D. Tex. 2008) .................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570,(2007)...........................................................................................5

*Donell v. Keppers*,
   835 F. Supp. 2d 871 (S.D. Cal. 2011)........................................................................3

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333, 339 (5th Cir. 2008) .............................................................................8

*Felch v. Transportes Lar-Mex S.A. de C.V.*,
   92 F.3d 320 (5th Cir. 1996) .......................................................................................3

*Freudensprung v. Offshore Tech. Srvs., Inc.*,
   379 F.3d 327 (5th Cir. 2004) .....................................................................................2

*GE Cap. Com., Inc. v. Wright & Wright, Inc.*,
   No. CIV A 309-CV-572-L, 2009 WL 5173954 (N.D. Tex. Dec. 31, 2009)
   (Lindsay, J.) ........................................................................................................6, 7, 8

*Green v. Forney Eng'g Co.*,
   589 F.2d 243 (5th Cir. 1979) .....................................................................................3

*In re Essential Fin. Educ., Inc.*,
   629 B.R. 401 (Bankr. N.D. Tex. 2021)....................................................................10

*In re Texas Rangers Baseball Partners*,
   498 B.R. 679 (Bankr. N.D. Tex. 2013).....................................................................11

*Janvey v. Alguire*,
   846 F. Supp. 2d 662 (N.D. Tex. 2011) .........................................................5, 15, 16

*Janvey v. Dillon Gage*,
   856 F.3d 377, 390 (5th Cir. 2007) ...........................................................................10

*Janvey v. Suarez*,
   978 F. Supp. 2d 685 (N.D. Tex. 2013) (Godbey, J.)..........................................6, 7, 9

*Janvey v. Willis of Colorado Inc.*,
   No. 3:13-CV-3980-N, 2014 WL 12670763 (N.D. Tex. Dec. 5, 2014),
   *amended sub nom. Off. Stanford Invs. Comm. v. Willis of Colorado, Inc.*, No.
   3:13-CV-3980-N, 2015 WL 13742125 (N.D. Tex. Feb. 4, 2015) ..............................15, 16, 17

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
   453 B.R. 645 (N.D. Tex. 2011)................................................................................................11

*Life Partners Creditors' Tr. v. Black Diamond Lifeplan Fund*,
   2017 WL 9934885 (N.D. Tex. Nov. 27, 2017) (O'Connor, J.) .................................................6

*Luv N' Care, Ltd. v. Insta–Mix, Inc.*,
   438 F.3d 465 (5th Cir. 2006) ...................................................................................................2

*Matter of Life Partners Holdings, Inc.*,
   926 F.3d 103 (5th Cir. 2019) .............................................................5, 6, 9, 11, 12, 13, 14, 17

*Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*,
   No. PE:21-CV-00030-DC-DF, 2022 WL 1491099 (W.D. Tex. May 11, 2022) ......................3

*Rasmussen v. Smith*,
   No. 3:18-CV-01034-M, 2020 WL 109863 (N.D. Tex. Jan. 8, 2020) ..................................9, 13

*Stripling v. Jordan Prod. Co., LLC*,
   234 F.3d 863 (5th Cir. 2000) .................................................................................................17

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
   817 F. Supp. 2d 934 (N.D. Tex. 2011) ....................................................................................6

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
   No. 3:10-CV-1842-G, 2012 WL 3100778 (N.D. Tex. July 31, 2012) (Fish, J.) ..................6, 7

*VeroBlue Farms USA, Inc. v. Wulf*,
   465 F. Supp. 3d 633 (N.D. Tex. 2020) .................................................................8, 9, 12, 13

*Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*,
   517 F.3d 235 (5th Cir. 2008) ...................................................................................................3

*Warfield v. Arpe*,
   No. CIVA 3:05CV1457 R, 2007 WL 549467 (N.D. Tex. Feb. 22, 2007)............................3, 4

*Warfield v. Byron*,
   436 F.3d 551 (5th Cir. 2006) ...........................................................................................14, 15

*WNS, Inc. v. Farrow*,
   884 F.2d 200 (5th Cir. 1989) ...................................................................................................3

*Wolkowitz v. Beverly (In re Beverly)*
374 B.R. 221 (9th Cir. BAP 2007)........................................................................10

**Statutes**

28 U.S.C. § 754............................................................................................2, 4, 5

28 U.S.C. § 1692.....................................................................................................4

CAL. CIV. CODE § 3439....................................................................................9, 10

CAL. CIV. CODE § 3439.04..........................................................................................9

CAL. CIV. CODE § 3439.04(a)(2)................................................................................14

CAL. CIV. CODE § 3439.04(b)...............................................................................9, 10

TEX. BUS. & COM. CODE § 24.005(a)(1)..............................................9, 10, 11, 15

TEX. BUS. & COM. CODE § 24.005(b)........................................................................10

**Other Authorities**

7A, pt. II, Unif. Laws Ann. 303 (1999) ............................................................10, 11

Federal Rules of Civil Procedure

    Rule 8...................................................................................................5, 11, 17

    Rule 8(a)......................................................................................5, 6, 7, 13, 14

    Rule 9.....................................................................................5, 7, 11, 12, 13, 17

    Rule 9(b).........................................................................................5, 6, 7, 8, 13

    Rule 12(b)(2)....................................................................................................3

    Rule 12(b)(6)..........................................................................................5, 6, 18

## I.

## Factual Summary

In Civil Action No. 3:20-cv-2910-X, *CFTC, et al., v. TMTE, Inc. a/k/a Metals.Com, et al.*, (the "Underlying Lawsuit"), the CFTC and 30 states filed their Complaint ("Underlying Complaint") against Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher ("Asher"), Simon Batashvili ("Batashvili"), and the entities they controlled TMTE, Inc., a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc. and Tower Equity, LLC. for engaging in a fraudulent scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion at exorbitant prices.[1]  On September 22, 2020, the Court entered an Order Granting Plaintiffs' Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO") [Underlying Lawsuit, Dkt. 16].  Pursuant to the SRO, the Court appointed Kelly M. Crawford as Receiver of the assets of Asher, Batashvili, and the entities they own and control (the "Receivership Defendants")[2] and vested the Receiver with authority to recover assets and investigate and initiate claims. Thereafter, the SRO was extended by Consent Orders. *See* Underlying Lawsuit, Dkt Nos. 164 and 165.

On September 13, 2021, the Receiver filed the Complaint in this lawsuit (the "Complaint"), and asserted five causes of action against 44 defendants (the "Broker Defendants") seeking to recover—for the benefit of the Receivership Estate—more than $11 million in fraudulent transfers paid by the Receivership Defendants to the Broker Defendants. Pursuant to Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, Defendants urge the Court to dismiss the Complaint. *See* Dkt. 81.

---

[1] *See* the Underlying Complaint, ¶¶1-6, attached to the Complaint in this case as Exhibit B.

[2] As defined in the SRO. See SRO ¶30. In general, all capitalized terms not defined above  have the meaning assigned to them in the SRO.

---

**RESPONSE TO DEFENDANTS DAVID BLEEDEN, BEARHUNTER, LLC, XAN, LLC, RANDALL KOHL, AND THE VOICE, INC.'S
MOTION TO DISMISS**                                                                 **Page 1**

In their Motion to Dismiss (the "Motion" or "MTD"), Defendants rely on objectively false facts and incorrect legal theories. For example, in challenging personal jurisdiction, Defendants assert the Receiver did not comply with 28 U.S.C. § 754. File stamped copies of the appropriate filings, however, disprove this contention. *See* **Exhibits A and B** to the *Appendix In Support of Receiver's Response* (the "Appendix").[3]  Defendants' additional arguments appear to be formulaic after-thoughts included in the Motion to provide length rather than merit.  The Rule 12(b)(6) and Rule 9(b) arguments rely on the wrong legal standard and misapply the standard utilized. The Receiver adequately pleaded his claims against the Defendants under any standard and the Motion should be dismissed.

## II.

## Argument and Authorities

**A.      This Court has Personal Jurisdiction Over Defendants.**

1)      Legal Standard Governing Rule 12(b)(2) Motions.

In response to a Rule 12(b)(2) personal jurisdiction challenge, the plaintiff bears the burden of making a *prima facie* case that jurisdiction exists. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In determining whether a *prima facie* case exists, the Court must accept as true the plaintiff's uncontroverted allegations and resolve in the plaintiff's favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation. *Freudensprung v. Offshore Tech. Srvs., Inc.,* 379 F.3d 327, 342-43 (5th Cir.

---

[3]If the Defendants had a question as to whether the Receiver complied with the filing requirements of 28 U.S.C. § 754, they should have simply conferred with the Receiver's counsel and the Receiver's counsel would have provided the Defendants with the file stamped copies showing compliance with the statute.  This would have avoided the costs incurred by the receivership in preparing this Response.

**RESPONSE TO DEFENDANTS DAVID BLEEDEN, BEARHUNTER, LLC, XAN, LLC, RANDALL KOHL, AND THE VOICE, INC.'S**
**MOTION TO DISMISS**                                                          **Page 2**

2004); *Felch v. Transportes Lar-Mex S.A. de C.V.,* 92 F.3d 320, 326 (5th Cir. 1996). Proof by a preponderance of the evidence is not required. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir. 1989). "Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

Here, the contentions in the Complaint and uncontroverted[4] evidence establish this Court's personal jurisdiction over the Defendants.

The personal jurisdiction analysis in this case differs significantly from the typical analysis. "[T]he requirement that the defendant have minimum contacts with a forum state does not apply in a federal question case in which personal jurisdiction is attained pursuant to a federal statute authorizing nationwide service of process." *Warfield v. Arpe*, No. CIVA 3:05CV1457 R, 2007 WL 549467, at *4 (N.D. Tex. Feb. 22, 2007). "[W]hen a congressional statute provides for nationwide service of process, the district court will have personal jurisdiction over a U.S. resident who is personally served in the United States since a resident has sufficient minimum contacts with the U.S. by virtue of his or her residency." *Id.* In a federal equity receivership, a receivership court may acquire jurisdiction over receivership property

---

[4] Defendants' assertion that their alleged search uncovered no evidence that the Receiver complied with Section 754 does not controvert Exhibits A and B, which demonstrates on its face that the Receiver satisfied Section 754. As in *Donell v. Keppers*, 835 F. Supp. 2d 871, 875 (S.D. Cal. 2011), even if the documents do not appear on the docket as alleged by the Defendants, this is insufficient to controvert Exhibits A and B. *See, e.g., Metro Equip. & Rental Co. v. Tsurumi Mfg. Co.*, No. PE:21-CV-00030-DC-DF, 2022 WL 1491099, at *8 (W.D. Tex. May 11, 2022) (finding that the complaint was uncontroverted when the defendants put forth evidence that did not "contradict or otherwise conflict with the relevant jurisdictional allegations," and holding that the motion to dismiss should therefore be denied*); Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979) (same). Significantly, even if the Defendants had submitted controverting evidence, the Court must resolve all conflicts in favor of the Receiver.

---

located in other districts (and any persons in possession of such property) pursuant to 28 U.S.C. §§ 754 & 1692. *Id.* at *10. "Section 1692 authorizes service of process upon defendants in possession of receivership assets, subject to the statutory prerequisites found in § 754."[5] *Id.*

Defendants agree that 28 U.S.C. § 754, together with 28 U.S.C. § 1692, provides personal jurisdiction over the Defendants, so long as the Receiver "complies with all statutory prerequisites to jurisdiction." *See* MTD, ¶21 (quoting *Warfield v. Arpe*, 2007 WL 549467, at *2–3*; Complaint, ¶53. Defendants' assertion that the Receiver failed to satisfy the Receivership Statutes' filing requirements, (MTD, ¶ 21) is simply incorrect.

> 2)      *The Requirements of Section 754 Have Been Met.*

Section 754 provides:

"A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

**Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located.** The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district."

28 U.S.C.A. § 754 (emphasis added). Based on Defendants' locations, the parties agree the "district court for each district in which the property is located" includes the Central District of California and the District of Wyoming. *See* MTD, ¶19. Contrary to Defendants' assertion and as evidenced in **<u>Exhibits A and B</u>**, the order of appointment, which is the SRO, and the

---

[5] Together, 28 U.S.C. § 754 and 28 U.S.C. § 1692 are referenced above as the "Receivership Statutes."

Underlying Complaint, both entered on September 22, 2020, were timely filed in both the United States District Court for the Central District of California and the United States District Court for the District of Wyoming.   As shown by **Exhibits A and B**, the SRO and the Underlying Complaint were each filed in the  Central District of California and the District of Wyoming on September 29, 2020, which is within the 10-day window ending October 2, 2020.[6] Thus, the jurisdictional prerequisites of Section 754 have been fully satisfied, and this Court possesses personal jurisdiction over Defendants.  *See, Janvey v. Alguire*, 846 F. Supp. 2d 662, 669 (N.D. Tex. 2011) (holding that court possesses personal jurisdiction under Section 754 over defendants to an ancillary case brought by the receiver where receiver filed  order appointing him and underlying complaint in the appropriate district court within  appropriate 10-day window).

### B.      The Receiver Adequately Pleaded Each Claim Alleged in the Complaint.

Defendants also argue the Complaint fails the heightened pleading standard of Rule 9(b). *See* MTD, ¶26–39. This argument relies on the  wrong legal standard, misstates the allegations of the Complaint, and misapplies the incorrect legal standard to the misstated factual allegations. The correct standard to apply to the Receiver's claims is generally Rule 8(a).  Nevertheless, the claims in the Complaint are adequately pled under both Rules 8 and 9.

### 1)      *Legal Standard for a Motion to Dismiss Under Rule 12(b)(6).*

Generally, a Rule 12(b)(6) challenge fails if the pleading satisfies Rule 8(a), which requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 116 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

---

[6] Indeed, the Receiver had the Underlying Complaint and SRO timely filed in federal district courts throughout the United States *See* Appendix, **Exhibit C**.

(2007)). In contrast, Rule 9(b), which generally governs fraud claims, requires  the "who, what, when, where, and why as to the fraudulent conduct." *Life Partners*, 926 F.3d at 117. Under either rule, exhibits to the complaint are considered part of the complaint for purposes of the analysis. *Id.*  Where "detailed and particularized allegations" show "motive and opportunity to commit alleged actual fraudulent transfers" the allegations permit the court to draw a reasonable inference of the debtor's intent. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.,* 817 F. Supp. 2d 934, 942 (N.D. Tex. 2011).

> 2)    *The Receiver's   Claim for Actual Fraudulent Transfer (Count I) is Plausible.*
>
> i.    *The Legal Standard for Actual Fraudulent Transfer (Count I) is Rule 8(a).*

The Fifth Circuit has not yet decided whether Rule 9(b) applies to fraudulent transfer claims. *Life Partners*, 926 F.3d at 118. Nonetheless, some courts in the Northern District of Texas have repeatedly held that Rule 9 does not apply to claims for actual fraudulent transfer. *See Life Partners Creditors' Tr. v. Black Diamond Lifeplan Fund*, 2017 WL 9934885, at *5 (N.D. Tex. Nov. 27, 2017) (O'Connor, J.) ("In the parallel suit . . . this Court refused to apply Rule 9(b) to fraudulent transfer claims, citing as persuasive the reasoning of two additional precedents in this District.");  *Janvey v. Suarez*, 978 F. Supp. 2d 685, 700 (N.D. Tex. 2013) (Godbey, J.) (holding that Rule 9's pleading requirements do not apply to actual or constructive fraudulent transfer claims); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *11  (N.D. Tex. July 31, 2012) (Fish, J.)) ("[T]he trend in this district is to conclude that [actual and constructive] fraudulent consideration claims are not subject to Rule 9(b)'s pleading requirements"); *GE Cap. Com., Inc. v. Wright & Wright, Inc.*, No. CIV A 309-

CV-572-L, 2009 WL 5173954, at *10 (N.D. Tex. Dec. 31, 2009) (Lindsay, J.) (holding that Rule 9(b) does not apply to actual fraudulent transfer claim).

These courts reason that since the fraud element of the claim depends only on the alleged fraud of the *transferor*, where the claim is asserted against the transferee, whose intent is irrelevant for purposes of the claim, Rule 9 has no application.  *See Suarez*, 978 F. Supp. 2d at 700 ("[I]ndeed, the defendant's conduct is simply not an element of the Receiver's claim"); *U.S. Bank Nat. Ass'n*, 2012 WL 3100778, at *11 (finding Rule 9(b) does not apply "because fraud is simply not an aspect of a fraudulent transfer claim," noting that "in a fraudulent transfer claim, the defendant's intent or conduct is irrelevant"); *GE Cap.*, 2009 WL 5173954, at *10 ("GECC has not alleged *fraud* against PlainsCapital or Moving Defendants, which is the contemplation of Rule 9(b). Plaintiffs have merely alleged that Moving Defendants were the recipient of funds fraudulently obtained. Nothing in the complaint or record indicates that Moving Defendants committed any fraudulent act that caused the funds to be transferred.").  Likewise, in the instant case, Defendants are the *transferees/recipients* of the fraudulent transfers and their conduct is not a requisite element of the fraudulent transfer claims.

ii.    *The Receiver's Claim for Actual Fraudulent Transfer (Count I) Is Plausible Under 9(b).*

Even if this Court applies Rule 9(b) to the Receiver's actual fraudulent transfer claim, the claim satisfies the Rule.  In their Motion, the Defendants improperly try to move the Court's focus away from the fraudulent intent of the Receivership Defendants/transferors and to the Defendants/transferees.

First, because the Receiver includes allegations in the Complaint that the Defendants participated in soliciting investors as part of the metals scheme of the Receivership Defendants,

the Defendants argue the Rule 9(b) pleading requirement for _securities fraud_ claims govern this case. *See* MTD, ¶34 n. 49 (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008), for its discussion of stating a claim for securities fraud). The Receiver has not pled any cause of action against the Defendants for securities fraud, so the standard articulated in the Motion is irrelevant to the case.

In addition, the allegations in the Complaint of fraudulent conduct by the Defendants is not relevant to stating a claim for actual fraudulent transfer because the Defendants are not alleged to have been the transferor.[7]

Defendants wrongly portray the "fraudulent intent" element of a claim for actual fraudulent transfer as applying to the fraudulent intent of the *transferee*. See MTD, ¶30. As discussed above, the "actual fraudulent intent" element applies only to the fraudulent intent of the *transferor*. The Defendants cite *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633 (N.D. Tex. 2020), where the court distinguished actual fraudulent transfer claims from constructive fraudulent transfer claims and applied Rule 9(b) to the former but not the latter. MTD, ¶30 n. 34. However, *VeroBlue* is distinguishable from this lawsuit. In *VeroBlue*, the defendants were "insiders" of the plaintiff corporation who caused the corporation to make fraudulent transfers for the personal benefit of the defendants. 465 F. Supp. 3d 633, 642–45. Thus, the defendants in *VeroBlue* were essentially both *transferees **and** transferors*. As such, the

---

[7] The allegations of fraudulent conduct in solicitations of investors by the Defendants are relevant only in support of other causes of actions and affirmative defenses. For example, the allegations undermine a potential affirmative defensive claim by the Defendants that they received the transfers in good faith and for reasonably equivalent value. *Rasmussen v. Smith*, No. 3:18-CV-01034-M, 2020 WL 109863, at *3 (N.D. Tex. Jan. 8, 2020) ("Here, Matthew was not a good faith transferee because he knew the $123,000 he received came from AriseBank as partial payment for the purchase of a bank he did not own." "Matthew thus could not have provided any value either."). Additionally, the allegations of fraudulent conduct by Defendants help establish counts 3 and 4, even though they are not necessary to state those causes of action.

plaintiff in that case had to allege actual fraudulent intent of the defendants to state a claim for actual fraudulent transfer against the defendants. *See id.*

In the instant case, the Defendants are transferees, but they are not also alleged to be transferors. See, e.g., Complaint, ¶1 ("In total, the Broker Defendants received more than $12 million in commissions, unearned compensation, and sales prizes, transferred to them by the Receivership Entities."). Thus, the elements of the actual fraudulent transfer claim in this case depend only on the alleged fraudulent acts of the Receivership Defendants as *transferors*, regardless of any conduct by the Defendants as transferees.

The fraudulent acts and intent of the Receivership Defendants in making the transfers to the Defendants is pleaded in detail in the Complaint. Because the fraudulent transfers to the Defendants were made by the Receivership Defendants from their offices in Beverly Hills, California, the codification of the Uniform Fraudulent Transfer Act by California ("CUFTA"), California Civil Code § 3439, governs the Receiver's fraudulent transfer claims.[8]  Under the relevant statute, a transfer is voidable for actual fraudulent transfer "if the debtor [the transferor] made the transfer. . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." CAL. CIV. CODE § 3439.04; *cf. Life Partners*, 926 F.3d at 117–19 (discussing the same language in Texas' UFTA ("TUFTA"), TEX. BUS. & COM. CODE § 24.005(a)(1)).

Allegations demonstrating the  "badges of fraud" enumerated in the fraudulent transfer statute satisfy the Receiver's pleading burden. *See Life Partners*, 926 F.3d at 119.  Both TUFTA and CUFTA provide the same non-exhaustive list of "badges of fraud", which provide circumstantial evidence of intent to defraud. CAL. CIV. CODE § 3439.04(b); TEX. BUS. & COM.

---

[8] Virtually every state has adopted the UFTA.  Although  each state's codification of the  UFTA are substantially identical, the possibility that a different state's UFTA may apply has no impact on the analysis at this stage.. *See, e.g., Janvey v. Suarez*, 978 F. Supp. 2d 685, 692 (N.D. Tex. 2013) ("any differences between TUFTA and another state's UFTA are likely to be negligible")..

CODE § 24.005(b); *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 430 (Bankr. N.D. Tex. 2021) ("badges of fraud" represent "commonly considered circumstantial evidence bearing on actual fraud."). Moreover, *no particular* badge of fraud is required and the absence of any specific badge of fraud is likewise not dispositive. *Janvey v. Dillon Gage*, 856 F.3d 377, 390 (5th Cir. 2007) ("the jury could, but did not have to, consider any of the badges of fraud"); *Wolkowitz v. Beverly, (In re Beverly)* 374 B.R. 221, 236 (9th Cir. BAP 2007)("The UFTA list of "badges of fraud" provides neither a counting rule, nor a mathematical formula … [and no] minimum number of factors tips the scales toward actual intent").

The Complaint alleges no less than five of the badges of fraud enumerated in both CUFTA and TUFTA. Specifically, the Receiver alleges

- The transfers were not made for reasonably equivalent value; *Complaint* ¶ 109a; CUFTA § 3439.04(b)(8);

- The Transfers, and other assets, were concealed; *Complaint* ¶ 109(b) and (c); CUFTA § 3439(b)(3) and (7);

- The Transfers were made while the transferors were insolvent; *Complaint* ¶ 109(d) and (e); CUFTA § 3439(b)(9);

- All transfers made by Barrick Capital were made after the transferors had been sued or the subject of regulatory discipline; *Complaint* ¶ 109(f); CUFTA § 3439(b)(4).

Because these badges are not exhaustive, the additional assertions regarding the Receivership Entities "sharp dealings" and fraudulent purpose, *Complaint* ¶ 109(h) and (j), are also relevant to satisfaction of the pleading standard. *See Asarco, LLC v. Americas Mining Corp.,* 396 B.R. 278, 371 (S.D. Tex. 2008) ("It is not necessary that all or any one of these badges of fraud support a finding of fraudulent intent"); *see also,* Comment (5) to UFTA,

*reprinted in* 7A, pt. II, Unif. Laws Ann… 303 (1999) ("Proof of the existence of *any one or more* of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent…") (emphasis added).

Pleading facts in support of the badges of fraud satisfies Rule 9(b), if that standard controls. *See Life Partners*, 926 F.3d at 119 (pleading badges of fraud satisfies Rule 9); *In re Texas Rangers Baseball Partners*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013) (Denying motion to dismiss actual fraudulent transfer claim based on three badges of fraud); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 672-73 (N.D. Tex. 2011) (Relying on pleadings demonstrating three badges of fraud—a transfer to (a) an insider, (b) while insolvent, (c) without the exchange of reasonably equivalent value—to deny motion to dismiss).

In *Life Partners*,  the Fifth Circuit reversed dismissal of fraudulent transfer claims against brokers who sold viatical investments. Without deciding which pleading standard applied (Rule 8 or Rule 9), the Fifth Circuit nonetheless addressed facts necessary to plausibly plead the claim. 926 F.3d at 119.  The Fifth Circuit held the complaint satisfied even the higher standard of Rule 9 because it included facts indicating that the transferor was part of a fraudulent scheme. *Id.* (complaint included "pages of allegations detailing the underlying fraudulent scheme."). Similarly, the Fifth Circuit held the complaint also satisfied the higher standard, if it applied, because an attachment to the complaint "sets out the details of the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period." *Id.*

Similarly, the Complaint in this lawsuit satisfies both Rule 8 and Rule 9 standards. The Complaint is replete with allegations explaining the fraudulent nature of the enterprise operated by the Receivership Defendants, explaining that through these claims, the Receiver seeks the recovery of commissions paid by the Receivership Defendants to the Broker Defendants for

soliciting investors to buy overpriced metal bullion based on misrepresentations pertaining to the supposed low risk and high yield of the investment. *Complaint*, ¶1, 77.   The fraudulent intent of the transferors (the Receivership Defendants)—the only relevant fraudulent intent—is demonstrated through pages of allegations detailing the underlying fraudulent scheme by the transferors/Receivership Defendants. *Complaint* ¶¶ 1, 55-99. Significantly, the Complaint also attached and incorporated the Complaint in the Underlying Lawsuit, which similarly provides details regarding the fraudulent actions of the transferors/Receivership Defendants and the fraudulent nature of the scheme they operated. *Complaint,* Exh. B, pp. 4-7, 12-41.

Finally, but perhaps most importantly, Exhibit C to the Complaint sets out the specific details of each of the fraudulent transfers at issue —the name of the transferor, the name of the transferees, the specific amounts of the transfers, and the dates of the transfers. *See Complaint*, Exhibit C.[9]   As in *Life Partners,* the Complaint, including its badges of fraud, alleges facts detailing the fraudulent scheme operated by the transferors/Receivership Defendants, and the schedule identifying the specifics of the transfers at issue satisfy even the higher Rule 9 standard. Accordingly, under either Rule 8 or Rule 9, the Motion should be denied.

---

[9] With respect to the allegedly "impermissible group pleading," *see, e.g.,* MTD, ¶34, "plaintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *VeroBlue*, 465 F. Supp. 3d 633, 655.  In this instance, each of the Defendants served as brokers, and were transferees of commissions from the Receivership Defendants operating a fraudulent enterprise.   The specifics of each transfer to each of the Defendants is set forth in detail in Exhibit C to the Complaint.

3)      *The Receiver States a Claim for Constructive Fraudulent Transfer (Count II).*

        i.      *Rule 8(a) Controls Whether the Receiver Stated a Claim for Constructive Fraudulent Transfer (Count II).*

As Defendants tacitly concedes[10] and the Fifth Circuit has recognized, district courts in the Fifth Circuit have repeatedly held that Rule 9(b) does not apply to claims for constructive fraudulent transfer. *Life Partners*, 926 F.3d at 120 ("District courts in the Fifth Circuit have suggested that constructive fraudulent transfer claims are only subject to Rule 8(a).").The lower standard applies because "constructive fraudulent transfer allows for fraudulent transfer without intent to defraud" and "fraud has nothing to do with a constructive fraudulent transfer claim because the transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee." *Life Partners*, 926 F.3d at 120 (cleaned up); *see also VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020); *Rasmussen v. Smith*, No. 3:18-CV-01034-M, 2020 WL 109863, at *2 (N.D. Tex. Jan. 8, 2020).

Undeterred by the absence of legal support, Defendants nonetheless argue that Rule 9 applies to the constructive fraudulent transfer claim because it "unequivocally 'sounds in fraud' and is inextricably intertwined with allegations of fraud by Defendants" MTD, ¶35.  Regardless of whether the allegations supporting the constructive fraud claim also "sound in fraud" or are "inextricably intertwined with allegations of fraud by Defendants," no court in the Northern District of Texas has ever applied Rule 9(b) to the claim.  Thus, Rule 8(a) rather than Rule 9(b), applies. *VeroBlue Farms USA, Inc.*, 465 F. Supp. 3d at 652 ("The Court concludes that Rule 9 applies to actual fraudulent transfer claims but not to constructive fraudulent transfer claims").

---

[10] See MTD, ¶35 ("district courts in the Fifth Circuit have 'suggested' that constructive fraudulent transfer claims are only subject to Rule 8(a)'s notice pleading standard").  Notably, Defendants fail to cite a single case in which a federal court in the Fifth Circuit applied Rule 9 to a  constructive fraudulent transfer claim.

ii.     *The Receiver's Constructive Fraudulent Transfer Claim (Count II) is Plausible Under Rule 8(a)*

Under CUFTA, a transfer is voidable if the debtor made the transfer without receiving "reasonably equivalent value in exchange for the transfer" and the debtor either (a) "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;" or (b) "[i]ntended to incur, or believed or reasonably should have believed the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2) The statute is identical to the same provision in TUFTA discussed in *Life Partners*. 926 F.3d at 119–21.

A complaint that alleges the transferor was insolvent for much of its existence and transfers made without the exchange of reasonably equivalent value pleads a plausible constructive fraudulent transfer claim. *Life Partners*, 926 F.3d at 120, 121. Plausibility exists where facts are pleaded that the transferor was insolvent for much of its existence because each new investment sold to victim investors created a liability to the investor for which the transferor lacked funds to repay due to payment of commissions to brokers and distributions to insiders. *Id.* The pleaded allegations that the defendants received commissions or fees for providing services "in furtherance of a fraudulent Ponzi-like scheme," satisfy Rule 8 regarding the absence of reasonably equivalent value because such services "do[] not confer reasonably equivalent value as a matter of law." *Life Partners*, 926 F.3d at 121; *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006). The Complaint in this case alleges that the transferors—the Receivership Entities— were insolvent for much of their existence. *Complaint*, ¶¶1,57-58; 104-105. It also alleges the absence of reasonably equivalent value in the transfers at issue. Complaint, ¶¶1, 55, 56, 59-68,

---

**RESPONSE TO DEFENDANTS DAVID BLEEDEN, BEARHUNTER, LLC, XAN, LLC, RANDALL KOHL, AND THE VOICE, INC.'S**
**MOTION TO DISMISS**                                                          **Page 14**

75-93, 100-108, 115. Thus, as in *Life Partners*, 926 F.3d at 121, the constructive fraudulent transfer claim satisfies Rule 8.

4) *The Receiver States a Claim for Unjust Enrichment, Constructive Trust, and Money Had and Received (Count III and IV).*

Like the fraudulent transfer claims, under either Rule 8 or Rule 9, Counts III (unjust enrichment) and IV (money had and received) are plausibly pleaded. Similarly, whether Counts III and IV are two separate causes of action or the same, the claim(s) are adequately pleaded. *See Alguire*, 846 F. Supp. 2d at 674–75 ("Regardless of whether Texas law allows an 'unjust enrichment' claim or requires pleading a claim for money had and received, the Receiver states claims under either 'applicable law.'").

Equitable claims for unjust enrichment, constructive trust, and money had and received are plausible when the Complaint includes allegations that the defendants obtained a benefit from the fraudulent entities' scheme that equity dictates they cannot justly retain. *Alguire*, 846 F. Supp. 2d at 675. Although these claims are by definition broad and amorphous, the facts that exist here, as in other receivership clawback cases, support their existence. For instance, the pleading standard is satisfied by allegations 1) that the defendants "kept their fraudulent scheme going" by "lur[ing] new investors" when the investor's funds were diverted for the fraudulent entities' own illicit purposes; and 2) that proceeds paid to broker-defendants "came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors." *Id.* at 674. Alternatively, alleging that the broker-defendants "participated in and contributed to the [fraudulent] scheme by knowingly providing misleading" information or materials to the victims also satisfies the pleading standard for these claims. *See Janvey v. Willis of Colorado Inc.*, No. 3:13-CV-3980-N, 2014 WL 12670763, at *2, 7 n. 3 (N.D. Tex. Dec. 5,

2014), *amended sub nom. Off. Stanford Invs. Comm. v. Willis of Colorado, Inc*., No. 3:13-CV-3980-N, 2015 WL 13742125 (N.D. Tex. Feb. 4, 2015).

Here, the Complaint alleges the Broker Defendants "received more than $12 million in commissions, unearned compensation, and sales prizes, transferred to them by the Receivership Entities." Complaint, ¶1. "The Broker Defendants received these assets in exchange for their sale of precious metals and coins, sold at grossly inflated prices based on false and misleading representations, to unsuspecting elderly investors." *Id*. The Complaint further alleges that the Receivership Entities "existed and operated solely to perpetrate fraud on unsuspecting, vulnerable investors, and line the pockets of Batashvili and Asher, and the Broker Defendants they supervised," and that the Receivership Defendants "used the Broker Defendants and made the transfers at issue in this lawsuit, to accomplish their goal." Complaint, ¶55, 56.

The Receiver's claims seek recoveries from the Defendants in order to pay back, to the extent possible, "the amount paid by each Investor to the Receivership Defendants in excess of the fair market value for the metals sold by the Receivership Defendants." Complaint, ¶57. The Complaint further alleges facts that the Broker Defendants, including the moving Defendants, used fraudulent techniques and  representations in knowingly selling metals to victim investors at unconscionably high prices. *See* Complaint, ¶59–93, 96–99.

The Complaint also alleges the Defendants benefitted from this activity through the commissions they were paid "in exchange for the fraudulent sales they made or substantially assisted." Complaint, ¶100.  The specific payments and aggregate amounts by which Defendants were unjustly enriched are detailed on the schedules attached to the Complaint as Exhibit C. *See* Complaint, Exhibit C-1 (detailing transfers to David Bleeden and his entities Bearhunter, LLC and Xan, LLC) and C-4 (detailing transfers to Randall Kohl and its entity The Voice).  These

allegations far exceed what is required by Rule 8. *See Willis*, 2014 WL 12670763, at *2, 7 n. 3 (receiver stated a claim for unjust enrichment by alleging that the broker defendants "participated in and contributed to" the fraudulent scheme by "knowingly providing misleading 'safety and soundness' letters").

### C.      If the Complaint is Deficient, the Court Should Grant Leave to Amend.

The Complaint satisfies the pleading requirements of Rules 8 and 9.   Indeed, the Complaint meets the specific guidelines set forth by the Fifth Circuit in *Life Partners*.   As a result, the Motion should be denied.   If, however, the Court concludes otherwise,   the Court should grant leave to replead any deficient claims. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) ("("The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Particularly in light of the purpose of this lawsuit—recovery for the victims of the fraudulent scheme—the Court should deny dismissal.

### III.

### Conclusion and Request for Relief

For the reasons discussed above, Plaintiff requests the Court to enter an order denying the Motion to Dismiss, and for such other and further relief which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

SCHEEF & STONE, LLC,

By: _/s/ Peter Lewis_
    PETER LEWIS
    State Bar No. 12302100
    peter.lewis@solidcounsel.com
    500 North Akard, Suite 2700
    Dallas, Texas 75201
    (214) 706-4200 Telephone
    (214) 706-4242 Facsimile


BROWN FOX PLLC

CHARLENE C. KOONCE
State Bar No. 11672850
charlene@brownfoxlaw.com
Cortney C. Thomas
State Bar No. 24075153
cort@brownfoxlaw.com
8111 Preston Road, Suite 300
Dallas, Texas 75225
(214) 327-5000 Telephone
(214) 327-5001 Facsimile

**ATTORNEYS FOR PLAINTIFF
KELLY CRAWFORD, IN HIS
CAPACITY AS RECEIVER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 12, 2022, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, which provided a "Notice of Electronic Filing" to all parties of record.

*/s/Peter Lewis*
PETER LEWIS