IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER FOR TMTE, INC. a/k/a METALS.COM, et al. | § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. 3:21-cv-02181-E |
| DAVID BLEEDEN, et al., | § § | |
| Defendants. | § § | |

## RECEIVER'S RESPONSE TO VERA DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

SCHEEF & STONE, LLC,

PETER LEWIS
State Bar No. 12302100
peter.lewis@solidcounsel.com
500 North Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200 Telephone
(214) 706-4242 Facsimile

BROWN FOX PLLC

CHARLENE C. KOONCE
State Bar No. 11672850
charlene@brownfoxlaw.com
Cortney C. Thomas
State Bar No. 24075153
cort@brownfoxlaw.com
8111 Preston Road, Suite 300
Dallas, Texas 75225
(214) 327-5000 Telephone
(214) 327-5001 Facsimile

**ATTORNEYS FOR PLAINTIFF
KELLY CRAWFORD, IN HIS
CAPACITY AS RECEIVER**

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY OF THE RESPONSE ................................................................. 1

II.    FACTUAL SUMMARY ............................................................................... 1

III.   ARGUMENT AND AUTHORITIES ........................................................... 3

     A.    Rule 12(b)(6) Legal Standard ........................................................... 3

     B.    Each Claim Satisfies All Applicable Standards ................................. 5

          1.    The Receiver's Factual Allegations Regarding the Actual Fraudulent Transfer Claim Satisfy Rules 8 and 9(b) ........................................ 5

              a.    Allegations Regarding Defendants' Participation Do Not Require Dismissal ........................................................... 8

              b.    Collective Assertions About the "Broker Defendants" Do Not Require Dismissal ........................................................ 12

          2.    The Complaint Adequately Pleads the Constructive Fraudulent Transfer Claim ......................................................................... 14

              a.    Rule 9(b) Does Not Apply ........................................... 14

              b.    Allegations Related to the Absence of Reasonably Equivalent Value Exchanged by Defendants Are Adequate .......................... 15

     C.    The Unjust Enrichment and Money Had and Received Claims Are Plausible ..... 16

     D.    Defendants Fail to Justify a More Definite Statement .......................................... 18

     E.    The Court Should Permit Leave to Amend .......................................... 19

IV.   CONCLUSION AND PRAYER ................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Greubel*,
   453 F. Supp. 2d 961 (N.D. Tex. 2006) ................................................................ 18

*Asarco, LLC v. Americas Mining Corp.*,
   396 B.R. 278 (S.D. Tex. 2008) .............................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 3

*Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*,
   235 F.R.D. 632 (E.D. La. 2006) .......................................................................... 18

*Bayou Superfund LLC v. WAM Long/Short Fund, II, LP (In re Bayou Grp., LLC)*,
   362 B.R. 624 (Bankr. S.D.N.Y. 2007) ................................................................ 11

*Berry v. Indianapolis Life Ins. Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) .................................................................. 4

*Bhatia v. Dischino*,
   2011 WL 3820825 (N.D. Tex. Aug. 29, 2011) .................................................. 13

*Bowlby v. City of Aberdeen, Miss.*,
   681 F.3d 215 (5th Cir. 2012) ................................................................................ 3

*Campbell v. Texas Tea Reclamation, LLC*,
   No. 3:20-CV-00090, 2021 WL 2211690 (S.D. Tex. May 6, 2021),
   *report and recommendation adopted*, No. 3:20-CV-90, 2021 WL 2211807
   (S.D. Tex. June 1, 2021) ...................................................................................... 15

*Chau v. Aviva Life & Annuity Co.*,
   No. 3:09-CV-2305-B, 2011 WL 1990446 (N.D. Tex. May 20, 2011) ............. 5, 14

*Clapper v. Am. Realty Inv'rs, Inc.*,
   No. 3:14-CV-2970-D, 2015 WL 3504856 (N.D. Tex. June 3, 2015) ................. 12

*Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*,
   814 F. Supp. 2d 698 (N.D. Tex. 2011) ................................................................ 10

*Davenport v. Rodriguez*,
   147 F. Supp. 2d 630 (S.D. Tex. 2001) ................................................................ 18

*Dueling v. Devon Energy Corp.*,
   623 Fed. Appx. 127 (5th Cir. 2015) .................................................................... 19

*Facciola v. Greenberg Traurig, LLP*,
   781 F. Supp. 2d 913 (D. Ariz. 2011),
   aff'd, 593 Fed. Appx. 723 (9th Cir. 2015) ............................................................................ 13

*GE Capital Comm., Inc. v. Wright & Wright, Inc.*,
   2009 WL 5173954 (N.D. Tex. 2009) ...................................................................................... 9

*Guidry v. Bank of LaPlace*,
   954 F.2d 278 (5th Cir. 1992) ................................................................................................ 4

*Guzman v. Nationstar Mortg. LLC*,
   No. 4:17-cv-823-O-BP, 2017 WL 6597959 (N.D. Tex. Dec. 8, 2017),
   *report and recommendation adopted*, No. 4:17-cv-823-O-BP, 2017 WL 6594199 (N.D. Tex.
   Dec. 26, 2017) .................................................................................................................... 19

*Harlow v. Friendship Med. Clinic, LLC*,
   No. 315CV00160MPMSAA, 2016 WL 9130982 (N.D. Miss. Apr. 28, 2016) ........................ 19

*Heldenfels Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*,
   352 F.3d 254 (5th Cir. 2003) .............................................................................................. 16

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992) ................................................................................................. 16

*Hines v. Wainwright*,
   539 F.2d 433 (5th Cir. 1976) .............................................................................................. 19

*In re Essential Fin. Educ., Inc.*,
   629 B.R. 401 (Bankr. N.D. Tex. 2021) .................................................................................. 7

*In re Texas Rangers Baseball Partners*,
   498 B.R. 679 (Bankr. N.D. Tex. 2013) .................................................................................. 7

*Janvey v. Alguire*,
   846 F. Supp. 2d 662 (N.D. Tex. 2011) .......................................................................... 16, 17

*Janvey v. Suarez*,
   978 F. Supp. 2d 685 (N.D. Tex. 2013) ...................................................................... 6, 9, 13

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
   453 B.R. 645 (N.D. Tex. 2011) ............................................................................................. 7

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001) .............................................................................................. 11

*Lorenzo v. Sec. & Exch. Comm'n*,
   203 L. Ed. 2d 484, 139 S. Ct. 1094 (2019) .......................................................................... 8

*Matter of Life Partners Holdings, Inc.*,
    926 F.3d 103 (5th Cir. 2019) ..................................................................................... passim

*Melder v. Morris,*
    27 F.3d 1097 (5th Cir.1994) ............................................................................... 3, 14

*Mitchell Energy Corp. v. Martin*,
    616 F. Supp. 924 (S.D. Tex. 1985) ........................................................................ 10

*Picard v. Merkin, (In re Bernard L. Madoff Inv. Securities, LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010) .................................................................. 11

*Rasmussen v. Smith*,
    No. 3:18-CV-01034-M, 2020 WL 109863 (N.D. Tex. Jan. 8, 2020) ...................... 14

*Reg'l Specialty Clinic, P.A. v. S.A. Randle & Associates, P.C.*,
    625 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ........................ 16

*S.E.C. v. Reynolds*,
    No. 3-08-CV-0438-B, 2009 WL 1065403 (N.D. Tex. Apr. 17, 2009) ...................... 3

*SB Premium, LLC v. Wolfpack Wholesale, Inc.*,
    No. 3:17-CV-931-L, 2018 WL 4362726 (N.D. Tex. Sept. 13, 2018) ...................... 18

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................ 12

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) .................................. 16, 17

*Txi Operations, LP v. City of McKinney, Tex.*,
    No. 4:20-CV-00353-ALM, 2020 WL 4601672 (E.D. Tex. Aug. 11, 2020) ........... 3, 11

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
    817 F. Supp. 2d 934 (N.D. Tex. 2011) ................................................................ 4, 5

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .................................................................................. 3

*U.S. ex rel. King v. Alcon Labs., Inc.*,
    232 F.R.D. 568 (N.D. Tex. 2005) .......................................................................... 10

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) .................................................................................. 3

*Varela v. Gonzales*,
    No. 3:13-CV-1278-B, 2013 WL 5658606 (N.D. Tex. Oct. 17, 2013)...................... 11

*VeroBlue Farms USA, Inc. v. Wulf,*
   465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................................................... 5, 14

*Vision Bank v. Jordan,*
   No. 3:11-CV-2065-B, 2012 WL 716097 (N.D. Tex. Mar. 5, 2012) ............................. 4

*Waller v. DB3 Holdings, Inc.,*
   No. CIV.A.3:07-CV-0491-D, 2008 WL 373155 (N.D. Tex. Feb. 12, 2008) ................... 17

*Warfield v. Byron,*
   436 F.3d 551 (5th Cir. 2006) ................................................................................. 16

*Williams v. NIBCO Inc.,*
   No. SA20CV0048JKPRBF, 2021 WL 1069044 (W.D. Tex. Mar. 18, 2021) .................. 4

*Wilson v. Deutsche Bank Tr. Co. Americas, as Trustee for Residential Accredit Loan, Inc.,*
   No. 3:18-cv-0854-D, 2019 WL 175078 (N.D. Tex. Jan. 10, 2019).................................. 12, 13

**Codes**

CAL. CIV. CODE § 3439(a)(2)...................................................................................... 5

CAL. CIV. CODE § 3439(b)(3)...................................................................................... 7

CAL. CIV. CODE § 3439(b)(4)...................................................................................... 7

CAL. CIV. CODE § 3439(b)(7)...................................................................................... 7

CAL. CIV. CODE § 3439(b)(9)...................................................................................... 7

CAL. CIV. CODE § 3439.04.......................................................................................... 6

CAL. CIV. CODE § 3439.04(a)(2)................................................................................ 15

CAL. CIV. CODE § 3439.04(b)...................................................................................... 7

CAL. CIV. CODE § 3439.04(b)(8)................................................................................ 7

TEX. BUS. & COM. CODE § 24.005(a)(1)................................................................. 5, 6

TEX. BUS. & COM. CODE § 24.005(a)(2)................................................................... 5

TEX. BUS. & COM. CODE § 24.005(b)....................................................................... 7

Plaintiff Kelly Crawford, in his capacity as Receiver for TMTE, Inc., a/k/a Metals.com, et al. ("Receiver"), files this Response to the Motion to Dismiss filed by Walter Vera, Verastan Group, LLC, and Midwood Capital (collectively, the "Defendants," and the "Motion"), Dkt. 89, and respectfully shows the Court as follows:

## I.    SUMMARY OF THE RESPONSE

The Fifth Circuit has not determined whether Rule 9(b) applies to fraudulent transfer claims, and this Court similarly need not address that question because each claim satisfies every applicable pleading standard. In asserting otherwise, Defendants attack the sufficiency of wholly irrelevant allegations regarding their own fraud in arguing the Receiver's claims do not satisfy Rule 8 or 9(b). Defendants, however, do not and cannot attack the sufficiency of the fraud allegations relevant to the Receiver's claims—the fraudulent intent possessed the Receivership Defendants. The Court should accordingly deny Defendants' Motion. Defendants also fail to satisfy the high bar for their alternative request that the Court require a more definite statement, and the Court should reject it as well.

## II.    FACTUAL SUMMARY

In *CFTC, et al., v. TMTE, Inc. a/k/a Metals.Com, et al.*, Civil Action No. 3:20-cv-2910-X (the "Underlying Lawsuit"), the CFTC and 30 states filed their Complaint (the "Underlying Complaint") alleging Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher ("Asher"), Simon Batashvili ("Batashvili"), and the entities they controlled were engaged in a fraudulent scheme through which they defrauded at least 1,600 persons by selling gold and silver bullion at exorbitant prices and based on fraudulent statements.[1] On September 22, 2020 in the Underlying Lawsuit, the Court entered an Emergency Ex Parte Statutory Restraining Order (the "SRO"), and appointed

---

[1] *See Complaint*, Dkt. 1, Exhibit B; *see also Underlying Complaint*, ¶¶ 1–6.

Kelly M. Crawford as Receiver of the assets of Asher, Batashvili, and the entities they own and control (collectively, the "Receivership Defendants").[2]

On September 13, 2021, the Receiver filed the Original Complaint in this lawsuit, (the "Complaint") asserting five causes of action against approximately 44 defendants (the "Broker Defendants") seeking to recover—for the benefit of the Receivership Estate—more than $11 million in fraudulent transfers by the Receivership Defendants to the Broker Defendants.  In more than 50 detailed factual paragraphs the Receiver demonstrated the Receivership Defendants' operation of a fraudulent enterprise. In an exhibit attached to and incorporated into the Complaint, the Receiver also detailed the date and amount of each transfer, the transferring entity, the manner in which each transfer was made, and the transferee/defendant who received each transfer the Receiver sought to recover.  Based on these facts, the Complaint asserted claims for actual and constructive fraudulent transfer, money had and received, unjust enrichment/constructive trust, and attorney's fees.

Based on the asserted failure to satisfy Rules 8 and 9(b), Defendants urge the Court to dismiss the Complaint.  Defendants argue the Complaint lacks specificity required by Rules 8 and 9(b), contending that "because the Defendants are alleged to have been complicit in the fraud," the Complaint lacks the "who, what, where, when, and how" details regarding Defendants' specific role in the fraud.[3] *Motion* ¶ 17.  Each claim, however, satisfies the applicable pleading standard, and the Court should deny the Motion.

---

[2] The SRO was subsequently extended by Consent Orders. *See* Underlying Lawsuit, Dkt. Nos. 164 and 165.  Pursuant to the SRO, the Receiver was vested with authority to recover assets and investigate and initiate claims.

[3] Defendants' arguments are similar to those raised by David Bleeden, Bearhunter, LLC, Xan, LLC, Randall Kohl, and the Voice, Inc. in the Bleeden Defendants' Motion to Dismiss.  *See* Dkt. 81.  Accordingly, pursuant to Rule 10, the Receiver expressly incorporates the arguments raised in response to the Bleeden Defendants' Motion.  *See* Dkt. 86.

## III.   ARGUMENT AND AUTHORITIES

### A.   Rule 12(b)(6) Legal Standard

Rule 12(b)(6) governs challenges premised on the sufficiency of pleadings required by Rule 8 or Rule 9.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).  In such an analysis, the Court accepts all "well-pleaded facts as true," "views them in the light most favorable to the plaintiff," and determines whether, based on those facts assumed as true, the challenged claim is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).  Thus, the two-step analysis first requires disregarding conclusory allegations and then evaluating the remainder to determine whether the challenged claim plausibly suggests entitlement to relief.  *Iqbal*, 556 U.S. at 664; *Txi Operations, LP v. City of McKinney, Tex.*, No. 4:20-CV-00353-ALM, 2020 WL 4601672, at *1 (E.D. Tex. Aug. 11, 2020); *S.E.C. v. Reynolds*, No. 3-08-CV-0438-B, 2009 WL 1065403, at *4 (N.D. Tex. Apr. 17, 2009).

Rule 8 sets a low bar for facial plausibility, which exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. "[T]he plausibility standard is not akin to a 'probability requirement,' but asks only for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In contrast, Rule 9(b), which governs allegations of fraud, requires the "who, what, when, where, and why as to the fraudulent conduct."  *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019); *Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir.1994) (describing Rule 9(b)'s requirements as the "essentials of the first paragraph of any newspaper story.").  Still, satisfying Rule 9 requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud."  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).  Indeed,

"[t]he amount of particularity required for pleading fraud differs from case to case." *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 796 (N.D. Tex. 2009); *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir. 1992) ("What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail."); *Williams v. NIBCO Inc.*, No. SA20CV0048JKPRBF, 2021 WL 1069044, at *13 (W.D. Tex. Mar. 18, 2021) (Rule 9(b) particularity "varies case-by-case"). Where "detailed and particularized allegations" show "motive and opportunity to commit alleged actual fraudulent transfers" the allegations permit the court to draw a reasonable inference of the debtor's fraudulent intent as required by either Rule 8 or 9(b).[4] *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.,* 817 F. Supp. 2d 934, 942 (N.D. Tex. 2011); *see also Vision Bank v. Jordan*, No. 3:11-CV-2065-B, 2012 WL 716097, at *3  (N.D. Tex. Mar. 5, 2012) (Denying motion to dismiss fraudulent transfer claims where "Plaintiff's Amended Complaint details the nature of the transfer, the parcels of land involved, the value of the land, and the reasons indicating why such a transfer may be fraudulent under the statute.").

Although the Fifth Circuit has declined to decide whether Rule 9(b) applies to fraudulent transfer claims, it has expressly concluded that factual allegations correlating to several badges of fraud and the "details of the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period . . . [and] pages of allegations detailing the underlying fraudulent scheme" satisfy the Rule. *Life Partners*, 926 F.3d at 119.  Defendants ignore *Life Partners* and the Fifth Circuit's interpretation of the Rule 9(b) standard in the context of the same claims and

---

[4] Under either rule, exhibits are deemed part of the complaint and appropriately considered in the 12(b)(6) analysis. *Life Partners*, 926 F.3d at 117.

nearly identical allegations at issue here. This Court should decline Defendants' implicit invitation to do the same.

**B.      Each Claim Satisfies All Applicable Standards**

The claims Defendants must defend are those pleaded—actual fraudulent transfer pursuant to CAL. CIV. CODE § 3439.04(a)(1) ("CUFTA") or TEX. BUS. & COM. CODE § 24.005(a)(1) ("TUFTA") [Count 1]; constructively fraudulent transfer pursuant to CUFTA § 3439(a)(2)) or TUFTA § 24.005(a)(2) [Count 2]; unjust enrichment [Count 3]; money had and received [Count 4]; and attorney's fees [Count 5].  The Court is not evaluating the plausibility of any fraud claim dependent on fraud committed by Defendants. Nor does Rule 9(b)'s application to fraud allegations, even those asserted with respect to non-fraud claims, convert the claims into fraud claims or import the elements of a fraud claim into the Receiver's claims.  *See, e.g., VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020); *Chau v. Aviva Life & Annuity Co.*, No. 3:09-CV-2305-B, 2011 WL 1990446, at *6 (N.D. Tex. May 20, 2011).

**1.      The Receiver's Factual Allegations Regarding the Actual Fraudulent Transfer Claim Satisfy Rules 8 and 9(b)**

This Court need not determine whether Rule 9(b) rather than Rule 8 governs the sufficiency of the Receiver's claims.  Assuming without conceding that Rule 9(b) applies to the actual fraudulent transfer claim,[5] Count 1, the fraud allegations on which the Receiver's claims rest—the Receivership Defendants' fraud—easily surpass Rule 9(b)'s requirements and therefore Rule 8's requirements as well.  *See U.S. Bank Nat Ass'n*, 817 F. Supp. 2d at 942 (allegations that satisfy Rule 9(b) necessarily also satisfy Rule 8).

---

[5] The Receiver expressly incorporates by references his arguments regarding application of the Rule 9(b) standard to actual fraudulent transfer claims, raised on pages 6-7 of his Response to the Bleeden Defendants' Motion to Dismiss. Dkt. 81.

Defendants challenge allegations that they "actively participated" in the underlying fraud scheme, asserting they are entitled to additional facts regarding their fraudulent solicitations, such as when those solicitations were made, to whom they were made, by whom, and why those solicitations were fraudulent.  *Motion* ¶¶ 25-26.  But those facts are unnecessary to determine plausibility of the Receiver's actual fraudulent transfer claim.

The elements of actual fraudulent transfer, Count 1, whether considered under CUFTA or TUFTA,[6] are a transfer made by a debtor (also referenced as "the transferor"—here the Receivership Defendants) made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  CUFTA § 3439.04; *see also Life Partners*, 926 F.3d at 117–19 (discussing the same language in TUFTA § 24.005(a)(1)).  Thus, the elements of the claim do not include the transferee/recipients' fraudulent intent.  *Suarez*, 978 F. Supp. 2d at 700 ("[I]ndeed, the defendant's conduct is simply not an element of the Receiver's claim").  Instead, the only relevant fraudulent conduct is the *Receivership Defendants'* fraudulent intent because Defendants' liability rests solely on their *receipt* of funds from the Receivership Defendants, the transferors, who possessed either actual fraudulent intent or, with respect to the constructive fraudulent transfer claim, were insolvent at the time of the transfers.  *See Complaint* at ¶¶ 107-112 (actual fraudulent transfer); ¶¶ 113-118 (constructive fraudulent transfer).

In *Life Partners,* without deciding which standard governed, the Fifth Circuit held that allegations nearly identical to those challenged by Defendants satisfied Rule 9(b), as well as the lower Rule 8 standard.  *Life Partners*, 926 F.3d at 117.  Factual allegations corresponding to the

---

[6] Virtually every state has adopted the Uniform Fraudulent Transfer Act ("UFTA"). Most states' codification of the UFTA are substantially identical, and the possibility that a different state's UFTA may apply has no impact on the analysis at this stage. *See Janvey v. Suarez*, 978 F. Supp. 2d 685, 692 (N.D. Tex. 2013) ("[A]ny differences between TUFTA and another state's UFTA are likely to be negligible.").

"badges of fraud"[7] provided circumstantial evidence of the intent to defraud, while the "newspaper article" items were supplied by an exhibit. *Life Partners*, 926 F.3d at 119; *see also In re Texas Rangers Baseball Partners*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013) (Denying motion to dismiss actual fraudulent transfer claim based on three badges of fraud); *Kaye v. Lone Star Fund V (U.S.), L.P.,* 453 B.R. 645, 672-73 (N.D. Tex. 2011) (Relying on pleadings demonstrating three badges of fraud to deny motion to dismiss).

The Receiver's factual allegations track the allegations deemed sufficient in *Life Partners.* Specifically, the Receiver pleaded no less than five badges of fraud:

- The transfers were not made for reasonably equivalent value; *Complaint* ¶ 109a; CUFTA § 3439.04(b)(8);

- The Transfers, and other assets, were concealed; *Complaint* ¶ 109(b) and (c); CUFTA § 3439(b)(3) and (7);

- The Transfers were made while the transferors were insolvent; *Complaint* ¶ 109(d) and (e); CUFTA § 3439(b)(9);

- All transfers made by Barrick Capital were made after the transferors had been sued or the subject of regulatory discipline.  *Complaint* ¶ 109(f); CUFTA § 3439(b)(4).

Because the badges of fraud are not exhaustive, additional contentions regarding the Receivership Defendants' "sharp dealings" and fraudulent purpose, *Complaint* ¶¶ 1, 77, 109(h) and (j), are also relevant to satisfaction of the pleading standard regarding the transferors' fraudulent intent.  *See Asarco, LLC v. Americas Mining Corp.,* 396 B.R. 278, 371 (S.D. Tex. 2008) ("It is not necessary that all or any one of these badges of fraud support a finding of fraudulent intent"); *see also* Comment (5) to UFTA, *reprinted in* 7A, pt. II, Unif. Laws Ann… 303 (1999)

---

[7] Both CUFTA and TUFTA list non-exclusive "badges of fraud," the existence of which provide circumstantial evidence of the transferor's fraudulent intent.  *Compare* CUFTA § 3439.04(b) *with* TUFTA § 24.005(b) ; *see also In re Essential Fin. Educ., Inc.,* 629 B.R. 401, 430 (Bankr. N.D. Tex. 2021) ("badges of fraud" represent "commonly considered circumstantial evidence bearing on actual fraud.").

("Proof of the existence of *any one or more* of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent . . .") (emphasis added).

Like the allegations deemed sufficient in *Life Partners*, an exhibit to the Complaint also included additional detail specific to each Defendant regarding the amounts and dates of the transfers each received, the manner in which each transfer was made, and the specific transferor (transferring entity). *See Complaint* Ex. C.   Those detailed lists are not free-floating allegations lacking context and specificity as to each Defendant.   Instead, each Defendants' role in growing the pool of defrauded Investors, who are the Receivership Defendants' creditors, is explained in detail. *Complaint* ¶¶ 1, 55-56, 76.   As in *Life Partners*, the Receiver's allegations in support of his actual fraudulent transfer claim meets any potentially applicable standard.

### a.   Allegations Regarding Defendants' Participation Do Not Require Dismissal

Nor do allegations regarding Defendants' participation in the fraud distinguish the holding of *Life Partners* or require additional detail for the Court to determine the Complaint satisfies Rule 9(b) (in the event Rule 9(b) applies).   First, the "Licensees" who sold the illegal investments in *Life Partners* were alleged to have disseminated false and misleading offering materials about the investments they sold,[8] an allegation indistinguishable from the Receiver's contention that Defendants made false and misleading statements in selling the illegal investments at issue.[9]   In discussing the sufficiency of the Trustee's fraudulent transfer claims however, the Fifth Circuit focused on the sufficiency of the allegations regarding "an actual intent to defraud *on the part of the LP Entities*." *Id.* at 119 (emphasis added).   Thus, allegations regarding the Licensees'

---

[8] *Life Partners*, 926 F.3d at 113 (describing LP Entities' offering materials, distributed and disseminated by the Licensees, as containing numerous misrepresentations, which formed the basis of several of claims asserted against the Licensees).

[9] *See Lorenzo v. Sec. & Exch. Comm'n*, 203 L. Ed. 2d 484, 139 S. Ct. 1094, 1104 (2019) (concluding disseminator of false statements may bear equal liability with "maker" of statements).

participation in the fraud on the investors played no role in the Rule 9(b) analysis regarding the fraudulent transfer claims.[10]

Second, to the extent the Court determines Rule 9(b) requires particularity regarding allegations addressing Defendants' participation in the fraud, the Complaint more than suffices. As to *each* Broker Defendant including Defendants, the Complaint alleges that between September 1, 2017 through September 2020 (¶ 66), each Broker Defendant made false or misleading statements or omissions from the Receivership Defendants' Beverly Hills offices (¶ 69) to the 1,600 defrauded Investors who were located throughout the country (¶¶ 57, 59, 62, 69), through phone calls, social media postings (¶¶ 63-64, 69), customer agreements (¶¶ 79-82), or fraudulent sales invoices (¶ 84).  Defendants, "and each of them" made these fraudulent statements to receive grossly inflated commissions and prizes.  (¶¶ 55, 79, 93).  The Complaint includes detailed facts regarding the false statements and omissions made by each Broker Defendant (¶ 59):

- Misrepresented to Investors that the Receivership Defendants were friends with conservative television and radio personality Sean Hannity and that Hannity recommended buying Precious Metals Bullion (¶ 64);

- Misrepresented that the federal government was going to take qualified retirement savings funds in a "Bail-in" to help banks and government programs; (¶ 69a);

- Misrepresented that IRA custodians were in financial trouble and were likely to collapse; (¶ 69b);

- Misrepresented that it was unclear who actually owned the underlying securities in IRA accounts; (¶ 69c);

- Misrepresented that the government could seize funds held in qualified retirement savings but could not seize Precious Metals Bullion held in SDIRAs; (¶69d)

---

[10] The absence of similar allegations in either *Janvey v. Suarez*, 978 F. Supp. 2d 685 (N.D. Tex. 2013) and *GE Capital Comm., Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954 (N.D. Tex. 2009) does not alter the Fifth Circuit's conclusion that the *Life Partners*' Complaint, which *did* include similar contentions, nonetheless satisfied both Rules.

- Misrepresented that Precious Metals Bullion were a safe and conservative investment and that Investors would not lose their funds in such investments; (¶ 69e);

- Falsely told investors that the prices charged for the Precious Metals Bullion was based on the prevailing market price; (¶¶ 72-74);

- Knew, but did not disclose, that the value of the Precious Metals Bullion was nowhere near the value as represented, and thus that at the moment of purchase, the Investors lost the majority of the value of the Bullion; (¶ 77-78);

- Failed to disclose the Receivership Defendants' and Broker Defendants' astronomical earnings based on the hidden markups; (¶ 79-83);

- Provided fraudulent sales invoices for the Precious Metals Bullion that had no reasonable relation to the fair market value price actually paid; (¶ 84);

- Misrepresented that the Precious Metals Bullion possessed numismatic value; (¶ 85-88).

Thus, even if Rule 9(b) applies to allegations of fraud related to the Broker Defendants, the Complaint satisfies its requirements. *See Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 712 (N.D. Tex. 2011) (Rule 9(b) satisfied, where plaintiff's claims were not a "pretext for discovery," a "strike suit, or an attempt to improperly impugn PSI's reputation," the types of claims Rule 9 was intended to prevent, and Complaint specified the time period during which the frauds were committed, the location, nature, how the participants profited, and the parties involved in the fraud); *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927–28 (S.D. Tex. 1985) (Complaint satisfied Rule 9(b) where it included "a period of time during which the alleged frauds were perpetrated, *i.e.,* January, 1977—November, 1982; the location, Houston; the nature of the fraud, kickbacks for payments for goods and services which Plaintiff never received; and the parties involved in the fraud, the Defendants."); *see also U.S. ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005) (when "facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge or control or where fraud occurred over an extended period of

time and consists of numerous acts, the specificity requirements of Rule 9(b) are applied less stringently.").

Finally, but in the alternative, the purportedly insufficient allegations pertaining to Defendants' role in assisting the Receivership Defendants' fraud—in making false statements or omitting material information about the metals they sold—provides background and context for the Receiver's claims, but have no role in the plausibility analysis for the Receiver's claims[11] regardless of which standard the Court applies. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."); *Varela v. Gonzales*, No. 3:13-CV-1278-B, 2013 WL 5658606, at *3 (N.D. Tex. Oct. 17, 2013) (disregarding fraud allegation for purposes of analyzing RICO claim for which the fraud allegation was irrelevant); *see also Txi Operations, LP*, 2020 WL 4601672, at *1 (conclusory allegations are ignored in 12(b)(6) analysis). Thus, because any allegations aimed at the Defendants' fraud are wholly irrelevant to the plausibility of the Receiver's fraudulent transfer claims, (or any other) the Court must disregard them in evaluating satisfaction of Rule 9(b).

---

[11] Some allegations may also have relevance to potential defenses Defendants may assert. But the plausibility of such a defense and the sufficiency of allegations negating the defense have no bearing on the plausibility of the Receiver's claims, since the Court cannot dismiss for a 12(b)(6) defect based on an affirmative defense that is not apparent on the face of the Complaint. *See Picard v. Merkin, (In re Bernard L. Madoff Inv. Securities, LLC)*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010) ("The element of good faith under section 548(c) of the Code [the Bankruptcy Code claim equivalent to TUFTA 25.001(a)(1)], bearing upon a transferee's motivations, is indisputably a factual question that may not be determined on the face of [a] complaint.") (internal quotation omitted); *see also Bayou Superfund LLC v. WAM Long/Short Fund, II, LP (In re Bayou Grp., LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007)("It is not incumbent on the plaintiff to plead lack of good faith on the defendants' part because lack of good faith is not an element of a plaintiff's claim under Section 548(a)(1)").

Accordingly, even if Rule 9(b) applies, based on allegations related solely to the Receivership Defendants' intent to defraud creditors—Investors and others—and disregarding allegations of Defendants' own role in the fraud, the Court can conclude that the Complaint satisfies Rule 12(b)(6). For instance, the Court should consider allegations that payments to the Broker Defendants were made by the Receivership Defendants to defraud the Receivership Defendants' creditors at a time when the Receivership Defendants knew they could not pay other creditors and were insolvent; the Receivership Defendants concealed assets; the Receivership Defendants (i.e., Barrick Capital) made transfers after the Receivership Defendants had been sued; and the Receivership Defendants had engaged in a pattern of sharp dealing. (¶ 1, 57, 72, 94, 100-105, 108-112). These allegations regarding the Receivership Defendants' fraudulent intent satisfy all standards potentially governing Count 1.

### b.    Collective Assertions About the "Broker Defendants" Do Not Require Dismissal

Defendants do not challenge the specificity of the allegations regarding the Receivership Defendants' fraudulent intent but assert the allegations regarding their respective participation in the fraud are impermissible "group pleadings." Outside of claims for securities fraud, which is not alleged here, no *per se* rule prohibits group pleading. *Wilson v. Deutsche Bank Tr. Co. Americas, as Trustee for Residential Accredit Loan, Inc.*, No. 3:18-cv-0854-D, 2019 WL 175078, at *7 (N.D. Tex. Jan. 10, 2019); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (PSLRA prohibits group pleadings for securities fraud claims). In contrast, for a non-securities fraud claim, where allegations ascribe the same conduct to each defendant in the same way, group pleading creates no Rule 8 or Rule 9(b) defect. *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) (where more than one person committed the same or similar act, identifying multiple parties collectively is

permissible); *Wilson,* 2019 WL 175078, at *7 (group pleadings that ascribe the same act to each defendant are permissible, as opposed to pleadings that ascribe one singular act to a group); *see also Bhatia v. Dischino*, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (grouped allegations may suffice "if the plaintiffs' allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants role.").

As discussed above, allegations regarding the Broker Defendants' fraudulent solicitations, including collective allegations about the conduct of *each* Defendant,[12] are more than sufficient to satisfy Rule 9(b).  *See Suarez*, 978 F. Supp. 2d at 695-96; *see also*, *e.g.*, *Facciola v. Greenberg Traurig, LLP*, 781 F. Supp. 2d 913, 919 (D. Ariz. 2011), *aff'd*, 593 Fed. Appx. 723 (9th Cir. 2015) ("Plaintiffs need not allege, in detail, all facts supporting each and every instance of fraud over a multi-year period.") (internal quotation and alteration omitted).  Nonetheless or in the alternative, the allegations related to Defendants' own fraudulent statements and omissions are unnecessary to a plausibility determination for any of the Receiver's claims.  Thus, to the extent Defendants contend those allegations fail Rule 9(b), presuming the Rule applies to the actual fraudulent transfer claim, the Court must disregard the deficient allegations and determine whether the claim is plausible without them.  In other words, with respect to the actual fraudulent transfer claim, the question is whether the unchallenged allegations about the Receivership Defendants' fraudulent intent—which are nearly identical to allegations deemed sufficient in *Life Partners*—satisfy Rule 9(b) and thus Rule 12(b)(6).  Because the Complaint provides detailed allegations regarding the Receivership Defendants' fraudulent intent and all newspaper article facts regarding the fraudulent

---

[12] The specifics of each transfers received by each Defendant, the only relevant "conduct" unique to each Defendant and the only conduct attributable to Defendants that pertains to the factually fraudulent transfer claim, are detailed in the Complaint.  *Complaint* ¶¶ 101, 106(k), and Exhibit C.

transfers to Defendants, the Court must answer that question affirmatively and deny the Motion to Dismiss Count 1.

### 2. The Complaint Adequately Pleads the Constructive Fraudulent Transfer Claim

#### a. Rule 9(b) Does Not Apply

As explained in detail in a separate brief[13] fraudulent intent has no role in a constructive fraudulent transfer claim. *Life Partners*, 926 F.3d at 120; *see also VeroBlue Farms USA, Inc.*, 465 F. Supp. 3d at 652 (constructive fraudulent transfer claims include no fraudulent intent element and are not governed by Rule 9(b)); *Rasmussen v. Smith*, No. 3:18-CV-01034-M, 2020 WL 109863, at *2 (N.D. Tex. Jan. 8, 2020). Defendants cite no case in which *any* court has applied Rule 9(b) to a constructive fraud claim, but assert that the presence of allegations regarding Defendants' role in the underlying fraud requires application of the higher standard because the claim "sounds in" or is "predicated on" fraud. *Motion* ¶ 28.

Rule 9(b) applies to non-fraud claims that depend on—are grounded on—fraud allegations. *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir. 1994); *Chau*, 2011 WL 1990446, at *6. Non-fraud claims, however, that co-exist with fraud allegations but do not depend on and or are not inextricably intertwined with those allegations are not subject to Rule 9(b). *See VeroBlue Farms USA, Inc.*, 465 F. Supp. 3d at 653; *Chau*, 2011 WL 1990446, at *6. The Receiver's constructively fraudulent transfer claim, Count 2, is the latter.

While the Complaint includes facts related to Defendants' fraudulent solicitations, those allegations, which more than comply with Rule 9(b), are wholly irrelevant to the constructive fraudulent transfer claim. A constructively fraudulent transfer claim requires only that the

---

[13] *See* Dkt. 86, at pp. 13-14. Again, the Receiver incorporates the arguments from his Response to the Bleeden Motion Dismiss here.

Receivership Defendants (the debtors) were (a) "engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;" or (b) "[i]ntended to incur, or believed or reasonably should have believed the debtor would incur, debts beyond the debtor's ability to pay as they became due." CUFTA § 3439.04(a)(2).[14]   That is exactly the basis for the claim pleaded by the Receiver. *Complaint* ¶¶ 115-117.   The allegations focus on the "debtors' financial condition" and the "sufficiency of the consideration" rather than any Defendants', or even the Receivership Defendants' "actual fraudulent intent."   *See Motion* ¶ 28 (quoting *Campbell v. Texas Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *6 (S.D. Tex. May 6, 2021), *report and recommendation adopted*, No. 3:20-CV-90, 2021 WL 2211807 (S.D. Tex. June 1, 2021)).

Nonetheless, even if the Court applies the heighted Rule 9(b) standard, the claim is plausible since 1) the allegations regarding Defendants' role in the fraud satisfy Rule 9(b);[15] and 2) as with the factually fraudulent transfer claim, the Court must disregard any deficient allegations and evaluate plausibility based on the allegations that do satisfy Rule 9(b). The Receiver's allegations are virtually identical to the allegations the Fifth Circuit held more than sufficient in *Life Partners*.   Thus, even if particularized detail is required as defendants allege, the Receiver's allegations are likewise sufficient here to defeat Defendants' Motion.

### b.   Allegations Related to the Absence of Reasonably Equivalent Value Exchanged by Defendants Are Adequate.

Defendants next contend that the Receiver failed to provide particularized allegations that Mr. Vera did not exchange reasonably equivalent value for the transfers at issue.  On the contrary, the Complaint alleges "fraudulent sales solicitations made by the Broker Defendants provided no

---

[14] CUFTA is identical to the same provision in TUFTA discussed in *Life Partners*. 926 F.3d at 119–21.

[15] *See* Section 1, *supra*.

value to the Receivership Entities and instead simply enlarged the pool of defrauded investors who hold claims against the Receivership Entities."[16] *Complaint* ¶ 115.  Defendants cite no authority for their assertion that the Receiver's allegations regarding the absence of reasonable equivalent value requires more.  *See Life Partners*, 926 F.3d at 121 ("[P]roviding services in furtherance of a fraudulent Ponzi-like scheme, as Creditors' Trust alleges the Licensees did, does not confer reasonably equivalent value as a matter of law."); *Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006) (broker's efforts to secure new investors in fraudulent enterprise did not provide reasonably equivalent value).  The Receiver's constructive fraudulent transfer claim is plausible, and the Court should reject Defendants' arguments to the contrary.

## C.       The Unjust Enrichment and Money Had and Received Claims Are Plausible

While numerous intermediate Texas appellate courts have concluded unjust enrichment provides a theory of recovery rather than a claim, others disagree relying on a Texas Supreme Court case.  *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Associates, P.C.*, 625 S.W.3d 895, 904 (Tex. App.—Houston [14th Dist.] 2021, no pet.), *reh'g denied* (Aug. 3, 2021) (*citing Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *see also Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. — Dallas 2009, pet. denied).  This Court must follow the Texas Supreme Court rather than any intermediate court.  *Heldenfels Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court."); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 674 (N.D. Tex. 2011) (Denying motion to dismiss claim for "unjust enrichment", because "[r]egardless of

---

[16] The time, place, manner, content and recipients of those fraudulent solicitations are pleaded in detail.  *Complaint* ¶¶ 69–93.

whether Texas law allows an 'unjust enrichment' claim or requires pleading a claim for money had and received, the Receiver states claims under either applicable law.").

A plausible unjust enrichment claim exists when "the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Tex. Integrated Conveyor Sys., Inc.,* 300 S.W.3d at 367.  Similarly, a claim for money had and received, which may be an alternative label for an unjust enrichment claim, *see Alguire*, 846 F. Supp. 2d at 674, is plausible where the defendant received funds that "in equity, justice, and law" belong to another.  *Id.*  Neither claim requires fraud on Defendants' part, but instead requires only the Receiver's greater entitlement, standing in the shoes of the Receivership Defendants' creditors, to the funds received by Defendants.  *Id.*  As in other receivership cases, the low pleading standard applicable to these claims is satisfied by allegations that 1) that the defendants "kept their fraudulent scheme going" by "lur[ing] new investors" when the investor's funds were diverted for the fraudulent entities' own illicit purposes; and 2) that proceeds paid to  broker-defendants "came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors." *Id.*

This Court should also conclude, based on the detailed allegations found sufficient in *Life Partners* demonstrating the Receivership Defendants' efforts to defraud their creditors and use funds obtained from those creditors to pay Defendants—the fraudulent scheme at issue—that these claims are plausible.  *See Complaint* ¶¶ 1, 55, 56; *Alguire*, 846 F. Supp. 2d at 674; *see also Waller v. DB3 Holdings, Inc.*, No. CIV.A.3:07-CV-0491-D, 2008 WL 373155, at *6 (N.D. Tex. Feb. 12, 2008) (denying motion to dismiss unjust enrichment claim where defendants' retention of funds would "amount to the taking of undue advantage").  No other allegations, including those

challenged by Defendants pursuant to Rule 9(b), are necessary or relevant.  The Court should deny Defendants' motion to dismiss the unjust enrichment and money had and received claims.

## D.      Defendants Fail to Justify a More Definite Statement

Defendants seek a more definite statements pursuant to Rule 12(e), contending the Receiver failed to provide "essential, bare details" sufficient to identify which Broker Defendants are responsible for "the acts referenced" in certain enumerated paragraphs that include grouped references to the "Broker Defendants."  The Court should deny the motion.

Motions for more definite statement are generally disfavored and should provide a remedy only for "an unintelligible pleading rather than a correction for lack of detail."  *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001); *SB Premium, LLC v. Wolfpack Wholesale, Inc.*, No. 3:17-CV-931-L, 2018 WL 4362726, at *12 (N.D. Tex. Sept. 13, 2018) (Rule 12(e) motion "normally granted only when a complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.") (internal quotation omitted)).  Using a motion for more definite statement to seek information within the moving party's knowledge further militates denial of the motion.  *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006).  Likewise, a Rule 12(e) motion is inappropriate when the information sought can be obtained through discovery.  *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006).

Nothing about the Receiver's allegations are unintelligible or vague.  Indeed at least eight other defendants, situated identically to these moving Defendants, have answered the *Complaint* without issue.  *See* Dkts. 13, 40, 54, and 73.  Further, the information Defendants contend is lacking is 1) within their personal knowledge; and 2) squarely within the scope of discovery. The Court should deny Defendants' motion for a more definite statement.

– 18 –

**E.      The Court Should Permit Leave to Amend**

As demonstrated above, the *Complaint* satisfies Rules 8 and 9 and closely follows the specific requirements approved for identical claims in *Life Partners.*   The Court should accordingly deny the Motion.   In the alternative, if the Court grants Defendants' Motion to Dismiss, the Court should permit the Receiver to replead.

Rule 15 requires granting leave freely when justice so requires.  *Dueling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 130 (5th Cir. 2015); *Harlow v. Friendship Med. Clinic, LLC*, No. 315CV00160MPMSAA, 2016 WL 9130982, at *4 (N.D. Miss. Apr. 28, 2016).  Courts in the Fifth Circuit "generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings.  *See Guzman v. Nationstar Mortg. LLC*, No. 4:17-cv-823-O-BP, 2017 WL 6597959, at *2 (N.D. Tex. Dec. 8, 2017), *report and recommendation adopted*, No. 4:17-cv-823-O-BP, 2017 WL 6594199 (N.D. Tex. Dec. 26, 2017) (gathering cases and also citing *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) as an example of the Fifth Circuit vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).  Prejudice to the nonmovant provides the primary concern regarding leave to amend.  *Dueling*, 623 Fed. Appx. at 130.  Where no scheduling order has issued, prejudice does not exist.  *Id.*

No scheduling order has been issued and the Receiver continues his efforts to serve numerous Defendants.[17]  Thus, no prejudice will result from allowing the Receiver to replead.  Particularly in light of the purpose of this lawsuit—recovery for the victims of the fraudulent scheme—the Court should authorize an amended complaint if it grants Defendants' motion to dismiss.

---

[17] The Receiver's Motion for Leave to serve through publication is pending.  *See* Dkt. 71.

## IV.   **CONCLUSION AND PRAYER**

For the reasons discussed above, the Receiver requests that the Court deny the Motion to Dismiss, and requests such other and further relief to which he may show himself entitled.

Respectfully submitted,

BROWN FOX PLLC

By:   */s/ Charlene C. Koonce*
      CHARLENE C. KOONCE
      State Bar No. 11672850
      charlene@brownfoxlaw.com
      Cortney C. Thomas
      State Bar No. 24075153
      cort@brownfoxlaw.com
      8111 Preston Road, Suite 300
      Dallas, Texas 75225
      (214) 327-5000 Telephone
      (214) 327-5001 Facsimile

SCHEEF & STONE, LLC,

PETER LEWIS
State Bar No. 12302100
peter.lewis@solidcounsel.com
500 North Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200 Telephone
(214) 706-4242 Facsimile

**ATTORNEYS FOR PLAINTIFF
KELLY CRAWFORD, IN HIS CAPACITY AS
RECEIVER**

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.