UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY M. CRAWFORD, IN HIS CAPACITY AS RECEIVER FOR TMTE, INC. a/k/a METALS.COM, | § § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:21-CV-2181-X |
| v. | § § | |
| DAVID BLEEDEN, et al., | § § § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are three motions to dismiss the plaintiff's complaint and a motion for a more definite statement. [Doc. Nos. 81, 89, and 120]. For the reasons below, the Court **DENIES** all four motions.

### I. Background

This case arises out of an underlying action by the Commodity Futures Trading Commission and thirty states against two alleged con men and the host of entities the men used to allegedly perpetrate a Ponzi scheme (the "Underlying Suit").[1] The complaint in the Underlying Suit alleges that the scheme "defraud[ed] at least 1,600 persons throughout the United States into purchasing gold and silver bullion" by "target[ing] a vulnerable population of mostly elderly or retirement-aged persons" and "making material misrepresentations and omissions" to "deceive[] investors into purchasing [precious metals] at prices averaging from 100% to over 200% over" their

---

[1] Doc. No. 1-2 at 3–5 (order appointing receiver in *CFTC v. TMTE, Inc.*, No. 3:20-CV-2910-L (N.D. Tex. Sept. 22, 2020)).

actual value.[2]  The investors in the Underlying Suit "hold claims totaling $63.4 million."[3]  The Court appointed Plaintiff Kelly Crawford (the "Receiver") "to collect, receive and take exclusive custody, control, and possession of certain assets" controlled by the defendants in the Underlying Suit and "to institute proceedings as may, in his judgment, be necessary or proper for the protection and collection of" such assets to repay the defrauded investors.[4]

This case is one such proceeding.  The Receiver sued a group of defendants that he alleges helped broker the deals in the Underlying Suit (the "Broker Defendants").[5]  The Receiver alleges that the Broker Defendants served the fraudulent scheme by selling "precious metals and coins [] at grossly inflated prices based on false and misleading representations[] to unsuspecting elderly investors," and that for their efforts they "received more than $12 million in commissions, unearned compensation, and sales prizes, transferred to them by the" defendants in the Underlying Suit.[6]  The Receiver alleges that "each of the Broker Defendants knew, had notice of, or recklessly

---

[2] *Id.* at 7–8.

[3] Doc. No. 1 at 12.

[4] *Id.* at 3; *see* Doc. No. 1-2 at 16–17.

[5] The Broker Defendants are David Bleeden; Bearhunter, LLC; Xan, LLC; Daniel Isaac Halimi; Halimi Group, LLC; Athena Hunter; TPH Boss, LLC; Randall Kohl; The Voice, Inc.; Benjamin Lee; Mettabel Inc.; Deric Scott Ned; Poor Trap, Inc.; Deep State Marketing, Inc.; Michael Peralta; MPERA Corp.; Sean Reza, also known as Thomas Reza; Amerigold, Inc.; Kyle D. Sanna; Hurricane Holdings, Inc.; LTK Marketing, LLC; Christopher Stephan; Eco Blue Inc.; Walter Vera; Verastan Group, LLC; Midwood Capital; Richard Joe Dougherty III; Rich Dough, Inc.; Matthew Levitt; Gooner Enterprises, Inc.; James Flicek; Ellipsis Marketing; Joshua Ferdman; Ferdman Group, Inc.; Andrew Eilers; Andrew J. Eilers Consulting, Inc.; Alexander Flamer; 9th Level Marketing, Inc.; David Wolan; Harper Metals Group, LLC; Brock Bowers, also doing business as BA Bowers LLC; TOTM Production Group, LLC; Phillip Levy; and IQ Capital Advisors, Inc.

[6] Doc. No. 1 at 2.

disregarded the truth about the unconscionably inflated prices at which they sold" precious metals to the investors.[7]

"Standing in the [defrauded investors'] shoes for purposes of the claims asserted" in the Underlying Suit, the Receiver "seeks to recover the funds fraudulently transferred to the Broker Defendants."[8]  Specifically, the Receiver alleges (1) actual fraudulent transfer, (2) constructive fraudulent transfer, (3) unjust enrichment, and (4) money had and received.[9]

Overall, the three motions to dismiss give the Court a sense of déjà vu.

First, a group of five Broker Defendants (the "Cook Defendants")[10] moves to dismiss the Receiver's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Receiver failed to plead any of his claims with the particularity required by Rules 9(b) and 8(a).[11]  The Cook Defendants also initially argued that the Court lacked personal jurisdiction, but they expressly withdrew this argument in their reply brief.[12]

Second, a group of three different Broker Defendants (the "Alfred Defendants")[13] also moves to dismiss under Rule 12(b)(6), and in the alternative, moves to require the

---

[7] *Id.* at 16.

[8] *Id.* at 3.

[9] *Id.* at 26–30.

[10] The Cook Defendants are David Bleeden; Bearhunter, LLC; Xan, LLC; Randall Kohl; and The Voice, Inc.  For simplicity, the Court refers to these parties by the name of their shared counsel, Daniel A. Cook.

[11] Doc. No. 81 at 14–23.

[12] *Id.* at 11–14; Doc. No. 90 at 2 n.3.

[13] The Alfred Defendants are Walter Vera; Verastan Group, LLC; and Midwood Capital.  For simplicity, the Court refers to these parties by the name of their shared counsel, Michael S. Alfred.

Receiver to file an amended complaint with more definite facts and allegations.[14] Other than omitting the Cook Defendants' jettisoned jurisdictional argument and tacking on a motion for a more definite statement, the Alfred Defendants copied the Cook Defendants' motion word for word.[15]

Finally, two more Broker Defendants (the "Wolan Defendants")[16] copied and pasted the Cook Defendants' brief verbatim, and thus move to dismiss for the same reasons under Rule 12(b)(6) and—since the Wolan Defendants apparently did not read the Cook Defendants' reply brief before plagiarizing their motion—for lack of personal jurisdiction.[17] At this point, Yogi Berra's "it's déjà vu all over again" comment would be factually accurate.

## II.  Legal Standard

When a party challenges the sufficiency of pleadings under Rule 8 or 9, Rule 12(b)(6) governs that challenge.[18]  Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the

---

[14] Doc. No. 89 at 10–18.

[15] *Compare* Doc. No. 81 at 16–23, *with* Doc. No. 89 at 12–17 (identical, including footnotes, alterations to quotes, and even typos, except for the font and the party names).

[16] The Wolan Defendants are David Wolan and Harper Metals Group, LLC.  For simplicity, the Court refers to these parties by the name of their shared counsel, *pro se* defendant David Wolan.  An LLC, even a single member one, is a separate corporate entity.  As such, it must be represented by counsel and cannot proceed *pro se*.  This causes the Court to deny Harper Metal Group, LLC's argument.  But given that the arguments are copied from other briefs and those argument fail, the arguments would still fail even if made by counsel.

[17] *Compare* Doc. No. 81 at 16–23, *with* Doc. No. 120 at 11–22. (appearing identical except for the font and—with multiple clumsy exceptions—the party names).  Because the Wolan Defendants' motion is a clone of the Cook Defendants' motion, the Court will rule on it without awaiting the Receiver's response brief.

[18] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

light most favorable to the plaintiff."[19]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20]

Under Rule 8, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[22]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[23]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[24]

Rule 9 is far more demanding.  "Perhaps . . . due to the heightened sensitivity to labeling someone a fraudster," or because "statements made in court are not actionable as defamation,"[25] Rule 9 imposes a heightened pleading standard requiring plaintiffs to "state with particularity the circumstances constituting fraud or mistake."[26]  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the

---

[19] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[20] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Id.*

[22] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[23] *Iqbal*, 556 U.S. at 678.

[24] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[25] *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020) (Starr, J.).

[26] FED. R. CIV. PROC. 9(b).

5

misrepresentation and what he obtained thereby."[27]  Put simply, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."[28] The Fifth Circuit's "precedent interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[29]

### III.  Analysis

The Court will first address the Wolan Defendants' jurisdictional argument. Then, the Court will consider the Cook, Alfred, and Wolan Defendants' identical Rule 12(b)(6) arguments: that Rule 9(b)'s heightened pleading standard applies to the Receiver's claims and that the complaint falls short of that standard as to each claim.[30] Finally, the Court will turn to the Alfred Defendants' motion for a more definite statement.

---

[27] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

[28] *Thompson*, 125 F.3d at 903 (cleaned up).

[29] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (cleaned up).

[30] Doc. Nos. 81 at 14–23; 89 at 10–17; 120 at 14–22.

### a. Personal Jurisdiction

The Wolan Defendants, heedlessly parroting the Cook Defendants' now-discarded argument, assert that the Court lacks personal jurisdiction over the Broker Defendants because the Receiver failed to timely file a copy of the Court's order appointing the Receiver in the districts where the Broker Defendants reside and the contested property is located, as required by 28 U.S.C. §§ 754 and 1692.[31]

But that's completely—and verifiably—false. The Receiver timely filed his order of appointment in the relevant districts, as shown by uncontested documents in the appendix to the Receiver's response to the Cook Defendants' motion to dismiss.[32] The Cook Defendants read the Receiver's response and sensibly withdrew this argument, but the Wolan Defendants apparently neglected to read either the Receiver's response or the Cook Defendants' reply to the motion the Wolan Defendants copied and pasted.

The Receiver satisfied the jurisdictional prerequisites of Section 754, and the Wolan Defendants' contention to the contrary is refuted by evidence that was publicly available on the docket for three months before the Wolan Defendants filed their motion to dismiss. The Court has personal jurisdiction over the Broker Defendants.

### b. Actual Fraudulent Transfer

The Fifth Circuit has not yet decided whether Rule 9 applies to actual fraudulent transfer claims, though it has acknowledged the division within its own district courts

---

[31] Doc. No. 120 at 11–14.

[32] Doc. No. 87 at 4–5, 7–9, 142–44, 277–78.

on this issue.[33]  The Court addressed this question in *VeroBlue Farms USA, Inc. v. Wulf* and concluded that "Rule 9 applies to actual fraudulent transfer claims" unless the precise claim at issue "require[s] no showing of fraudulent intent."[34]

The Receiver alleges that the Broker Defendants received fraudulent transfers from offices in Beverly Hills, California, so the California Uniform Fraudulent Transfer Act ("CUFTA") controls this claim.[35]  The relevant provision of CUFTA—which is substantially the same as Texas's UFTA ("TUFTA")[36]—states that transfers are voidable for fraud "if the [transferor] made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the" transferor.[37]  The all-important intent requirement, then, refers to the intent of the *transferor*, not the *transferee*.

All three motions to dismiss liken this case to *VeroBlue*, arguing that CUFTA's fraudulent-intent requirement ought to trigger Rule 9's heightened pleading standard.[38]  But the circumstances of this case have one key, distinguishing feature from those of *VeroBlue*: The defendants in *VeroBlue* were the *transferors*, and the

---

[33] *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019) (acknowledging that "the district courts in this circuit are not in unanimity on th[e] question" of whether Rule 8(a) or 9(b) governs actual fraudulent transfer claims and choosing not to "weigh in on this vexing question").

[34] 465 F. Supp. 3d at 652–53.

[35] Doc. No. 1 at 14, 21–22, 28.

[36] *See Janvey v. Suarez*, 978 F. Supp. 2d 685, 692 (N.D. Tex. 2013) (Godbey, J.) ("[A]ny differences between TUFTA and another state's UFTA are likely to be negligible." (cleaned up)).

[37] CAL. CIV. CODE § 3439.04(a)(1); *see* TEX. BUS. & COM. CODE § 24.005(a)(1) (same).

[38] 465 F. Supp. 3d at 653.  The Court also noted in *VeroBlue* that Rule 9 governs equitable claims that "include and are inextricably intertwined with fraud allegations," but this analysis was distinct from the Court's analysis of *statutory* fraud claims like the one at issue here.  *Id.*

Broker Defendants are alleged to be the *transferees*.[39] The complaint alleges that the defendants in the Underlying Suit were the transferors who furnished the fraud and that the Broker Defendants were the transferees who reaped the benefits of the fraud. That's why the goal of this suit is to recover "more than $12 million in commissions, unearned compensation, and sales prizes[] *transferred to* [the Broker Defendants] by the" defendants in the Underlying Suit.[40]

When it comes to TUFTA, the transferee's state of mind is irrelevant. There is "no principled reason for applying Rule 9's pleading requirements" when "there is no allegation that the defendant committed any act of fraud."[41] The text of TUFTA and CUFTA do not diverge on this point. The Receiver "[has] not alleged fraud against" the Broker Defendants, "which is the contemplation of Rule 9(b)"; instead, the Receiver "ha[s] merely alleged that [the Broker Defendants] were the recipient[s] of funds fraudulently obtained," which cannot trigger Rule 9(b).[42] The Receiver's actual

---

[39] To be a little more specific—since *VeroBlue* was "a doozy" of a case—the relevant *VeroBlue* defendants were alleged to be both transferors and transferees, but their liability under TUFTA hinged only on their status as transferors. *Id.* at 642. VeroBlue sued its corporate founders for their alleged mismanagement. *Id.* at 643–46. This mismanagement included actual fraudulent transfers under TUFTA, based on "over 14 misappropriation schemes" including "transferr[ing] 1.25 million shares of stock to another company they owned" at an inflated price, paying company employees to help rebuild one founder's lake house, and using company funds to pay personal debts. *Id.* at 644. So the *VeroBlue* defendants used their "insider" status to make fraudulent transfers to themselves, but critically, their TUFTA liability arose because they fraudulently transferred funds, not because they fraudulently received them. *See id.* at 652–53; TEX. BUS. & COM. CODE § 24.005(a)(1) (requiring a transferor to act with "actual intent to . . . defraud," but saying nothing about the transferee's state of mind).

[40] Doc. No. 1 at 2 (emphasis added). The complaint sufficiently demonstrates the fraudulent intent of the transferors (i.e., the defendants in the Underlying Suit) because it alleges that the transfers were not made for reasonably equivalent value; were concealed; and were made while the transferors were insolvent, and that some were made after the transferors had been sued or been subject to regulatory discipline. *See id.* at 26–27; CAL. CIV. CODE § 3439.04(b)(3)–(4), (7)–(9).

[41] *Janvey v. Alguire*, 846 F. Supp. 2d 662, 676 (N.D. Tex. 2011) (Godbey, J.) (cleaned up).

[42] *Id.* (emphasis omitted).

9

fraudulent transfer claim in this case—unlike the actual fraudulent transfer claim that the Court subjected to Rule 9 in *VeroBlue*—does not allege that any defendant in this case committed fraud.[43] Rule 9(b) has no role to play in the Court's analysis of this claim.

The sufficiency of the Receiver's actual fraudulent transfer claim, then, is governed by Rule 8(a). It meets that Rule's requirements. The complaint specifically lists every allegedly fraudulent transfer, including the transferor, transferee, amount, date, and, in most cases, method of transfer.[44] Coupled with the concrete facts alleging intentional transferor fraud, these details provide the requisite facial plausibility to satisfy Rule 8(a) as to this claim.

---

[43] To be clear, the Receiver alleges that the Broker Defendants "us[ed] fraudulent statements and omissions" when they solicited investments for the scheme at the core of the Underlying Suit, but that fraud is *not* the fraud alleged in the Receiver's actual fraudulent transfer claim. Doc. No. 1 at 4; *see Life Partners*, 926 F.3d at 113, 119 (noting fraud allegations against transferees but focusing solely on transferor fraud in analysis of "actual intent to defraud" for purposes of fraudulent transfer). The Receiver mentions the Broker Defendants' alleged fraud not to bolster his fraudulent transfer claims but rather to "undermine a potential affirmative defensive claim by the [Broker] Defendants that they received the transfers in good faith and for reasonably equivalent value" and because it "help[s] establish" his claims for unjust enrichment and money had and received. Doc. No. 86 at 13 n.7. The motions to dismiss protest that this ancillary fraud is "inextricably intertwined" with the fraudulent transfer claims, so, the argument goes, Rule 9 applies under the Court's analysis in *VeroBlue*. Doc. Nos. 81 at 16–17; 89 at 12; 120 at 20 (all quoting *VeroBlue*, 465 F. Supp. 3d at 653). But *VeroBlue* concluded that Rule 9 governs *equitable* claims that "include and are inextricably intertwined with fraud allegations," and this analysis was distinct from the Court's analysis of *statutory* fraud claims like the one at issue here. 465 F. Supp. 3d at 653.

[44] Doc. No. 1-4 at 2–34; *see Life Partners*, 926 F.3d at 119 (relying on an exhibit attached to the complaint in finding Rule 8's pleading standard met). Though both motions to dismiss accuse the complaint of "group pleading," federal pleading standards permit plaintiffs "to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *VeroBlue*, 465 F. Supp. 3d at 655 (cleaned up).

### c. Constructive Fraudulent Transfer

Under either CUFTA or TUFTA, constructive fraudulent transfer occurs when a transferor makes a transfer "[w]ithout receiving a reasonably equivalent value in exchange," and the transferor either "was about to engage in a . . . transaction for which the remaining assets of the [transferor] were unreasonably small" or "[i]ntended to incur . . . debts beyond the [transferor's] ability to pay as they became due."[45] "District courts in the Fifth Circuit have suggested that constructive fraudulent transfer claims are only subject to Rule 8(a)."[46] The Court expressly held as much in *VeroBlue*.[47] This is because "constructive fraudulent transfer allows for fraudulent transfer without intent to defraud" and "fraud has nothing to do with a constructive fraudulent transfer claim because the transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee."[48] The Fifth Circuit declined to decide whether Rule 9 governs constructive fraudulent transfer claims, but it acknowledged the "persuasive value" of this reasoning.[49]

The motions to dismiss argue that Rule 9 governs the Receiver's constructive fraudulent transfer claim. As with the actual fraudulent transfer claim, the motions point to the unrelated fraud allegations in the Underlying Suit to show that the

---

[45] CAL. CIV. CODE § 3439.04(a)(2)(A)–(B); *see* TEX. BUS. & COM. CODE § 24.005(a)(2)(A)–(B) (same).

[46] *Life Partners*, 926 F.3d at 120.

[47] *VeroBlue*, 465 F. Supp. 3d at 652 ("The Court concludes that Rule 9 [does not] appl[y] . . . to constructive fraudulent transfer claims.").

[48] *Life Partners*, 926 F.3d at 120 (cleaned up).

[49] *Id.*

11

constructive fraudulent transfer claim "sounds in fraud" and must therefore satisfy Rule 9.[50]

But the "sounds in fraud" argument sounds in futility. The Court will not do here what it refused to do in *VeroBlue*, especially when none of the motions to dismiss can cite a single example of another federal court ever having done so. Rule 9 does not apply to constructive fraudulent transfer claims because intent to defraud is not a requirement of the claim.[51]

Rule 8(a) governs this claim, and the complaint meets that pleading standard "because providing services in furtherance of a fraudulent Ponzi-like scheme," as the Receiver alleges the defendants did here, "does not confer reasonably equivalent value as a matter of law."[52] Further, since "a Ponzi scheme[] . . . is, as a matter of law, insolvent from its inception," the Ponzi perpetrators (i.e., the transferors) necessarily incurred debts beyond their ability to repay.[53] So by plausibly alleging that the defendants provided services to a Ponzi scheme, the Receiver plausibly alleged a claim for constructive fraudulent transfer.

---

[50] Doc. Nos. 81 at 20–21; 89 at 15–16.

[51] *See Rasmussen v. Smith*, No. 3:18-CV-1034-M, 2020 WL 109863, at *2 (N.D. Tex. Jan. 8, 2020) (Lynn, C.J.) ("[C]onstructive fraudulent transfer is a fraudulent transfer without there needing to be intent to defraud.").

[52] *Life Partners*, 926 F.3d at 121.

[53] *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).

### d. Unjust Enrichment and Money Had and Received

"Although it is unclear under Texas law whether unjust enrichment is an independent cause of action,"[54] "Texas courts have read claims for 'unjust enrichment' as pleading an equitable common law claim for money had and received," and "the two claims are substantively identical."[55] Regardless, "failure to identify the specific cause of action that provides an unjust enrichment remedy is not fatal to" the Receiver's claim.[56]

In Texas, "[u]njust enrichment occurs when [a party] has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."[57] And "in an action for money had and received," the plaintiff need only show "that [the] defendant holds money which in equity and good conscience belongs to" the plaintiff.[58]

The Receiver's complaint alleges that "[t]he Broker Defendants have been unjustly enriched by" transfers from the defendants in the Underlying Suit and notes that the Broker Defendants are thus in possession of money "that in equity and good conscience belong to the" defrauded investors.[59] This is because the complaint alleges the Broker Defendants "received more than $12 million in commissions, unearned compensation, and sales prizes" from fraudsters orchestrating a Ponzi scheme.[60]

---

[54] *Biliouris v. Sundance Resources, Inc.*, 559 F. Supp. 2d 733, 739 (N.D. Tex. 2008) (Godbey, J.).

[55] *Janvey*, 846 F. Supp. 2d at 674.

[56] *Id.*

[57] *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas Oct. 6, 2009) (pet. denied).

[58] *Janvey*, 846 F. Supp. 2d at 675 (cleaned up).

[59] Doc. No. 1 at 29–30.

[60] *Id.* at 2.

Because the Receiver is "[s]tanding in the [defrauded investors'] shoes," the Receiver argues that this money transferred to the Broker Defendants should, in equity, be handed over to the Receiver.[61]

Rule 9 governs these claims. In *VeroBlue*, the Court held that, when it comes to "ancillary equity claims" like "restitution" or "unjust enrichment," Rule 9's application depends "not [on] the label attached to the claim[] but [on] the substance of the allegations."[62] This substantive analysis for equitable claims is distinct from the more objective analysis for statutory claims, in which the statute either does or does not include a fraud element. The Court demonstrated this principle in *VeroBlue*, holding that Rule 9's application to statutory claims "depends on" whether the statute "require[s] [a] showing of fraudulent intent," while Rule 9's application to "equity claims" depends on whether they "include and are inextricably intertwined with fraud allegations."[63]

The Receiver's equitable claims depend on, and are inextricably intertwined with, the Broker Defendants' alleged fraud. The complaint does not describe the Broker Defendants as innocent third parties who received fraudulently obtained funds in perfect ignorance of their source; rather, it alleges that the Broker Defendants knew about, supported, and avidly participated in and benefited from the Ponzi scheme by duping and defrauding investors. In fact, the Broker Defendants' fraud appears to be a but-for cause of the Ponzi scheme's success because they brokered the actual sales to

---

[61] *Id.* at 3.

[62] 465 F. Supp. 3d at 653 (cleaned up).

[63] *Id.* at 652–53.

14

investors that funded the scheme. Their alleged fraud is thus inextricably intertwined with the Receiver's equitable claims, so Rule 9 applies.

The complaint's allegations satisfy Rule 9's heightened pleading standard. As noted above, the complaint meticulously lists the individual payments the Broker Defendants received,[64] and it relates the particulars of the Broker Defendants' roles in defrauding investors with great detail.[65] It alleges the identities of each Broker Defendant and the date, amount, and, in most cases, the method of transfer for each payment received.[66] To the extent the complaint fails to specifically allege facts about each Broker Defendant's individual misrepresentations to the investors they defrauded, "the pleading requirements of Rule 9(b) may be to some extent relaxed where, as is arguably the case here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge."[67] The complaint "set[s] forth a factual basis for [the] belief" that each Broker Defendant acted fraudulently in obtaining the money the Receiver now seeks to recover.[68] In other words, it adequately alleges that the Broker Defendants "obtained a benefit from the [Ponzi] scheme that equity dictates they

---

[64] Doc. No. 1-4 at 2–34.

[65] Doc. No. 1 at 12–25.

[66] Doc. No. 1-4 at 2–34.

[67] *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003).

[68] *Id.*; *see Janvey*, 846 F. Supp. 2d at 674 (finding a complaint adequately pled unjust enrichment claim by alleging that Ponzi scheme operators "kept their fraudulent scheme going by employing [defendants] to lure new investors and then divert the investors' funds for [the fraudsters'] own illicit purposes" and where the defendants' payment "came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors" (cleaned up)).

cannot retain justly."⁶⁹ Thus, the Receiver's claims for unjust enrichment and money had and received satisfy Rule 9's pleading standard.

### e. The Alfred Defendants' Motion for a More Definite Statement

The Alfred Defendants seek a more definite statement under Rule 12(e). Such requests are "generally disfavored," and courts normally grant them "only when a complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."⁷⁰ Rule 12(e) is also inappropriate to obtain information obtainable through discovery.⁷¹

The complaint's allegations are neither unintelligible nor prejudicially vague. Fifteen other identically situated defendants have answered the complaint.⁷² The Alfred Defendants want to know "which Broker Defendants . . . are responsible for the acts referenced" in the complaint, as well as which of the Alfred Defendants "were involved [in the fraud] and the facts surrounding the involvement of each."⁷³ Assuming this demand meets Rule 12(e)'s requirement that the motion "point out the defects complained of and the details desired,"⁷⁴ it seeks information that is either within the Alfred Defendants' personal knowledge or squarely within the scope of discovery. Thus, the Court finds no basis under Rule 12(e) to grant the motion for a more definite statement.

---

⁶⁹ *Janvey*, 846 F. Supp. 2d at 675.

⁷⁰ *SB Premium, LLC v. Wolfpack Wholesale, Inc.*, No. 3:17-CV-0931-L, 2018 WL 4362726, at *12 (N.D. Tex. Sept. 13, 2018) (Lindsay, J.) (cleaned up).

⁷¹ *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).

⁷² Doc. Nos. 13, 40, 54, 73, 99, 108, 113, 114, and 119.

⁷³ Doc. No. 89 at 18.

⁷⁴ FED. R. CIV. PROC. 12(e).

## IV. Conclusion

The Receiver's complaint satisfies the applicable pleading standard for each of its claims. For the foregoing reasons, the Court **DENIES** all three motions to dismiss. The Court also **DENIES** the Alfred Defendants' motion for a more definite statement.

**IT IS SO ORDERED** this 8th day of March, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE