UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY CRAWFORD, in his capacity as Receiver for TMTE, Inc., *et al.*, | § § § § § | |
| *Plaintiff*, | § | |
| v. | § § | Civil Action No. 3:21-cv-02181-E |
| DAVID BLEEDEN, *et al.*, | § § § | |
| *Defendants*. | § | |

**<u>VERA DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY</u>**

Defendants, Walter Vera ("Vera"), Verastan Group, LLC ("Verastan") and Midwood Capital, LLC ("Midwood") (collectively the "Vera Defendants"), file their Reply in Support of their Motion to Stay (Dkt. #313), and in support thereof, respectfully show as follows:

**OVERVIEW**

The Receiver argues no case is appropriate for a stay before an indictment is returned. However, that is inconsistent with developed case law where pre-indictment stays have been granted. *E.g., SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 866065, at *2 – 4 (N.D. Tex. Mar. 17, 2008). The Vera Defendants acknowledge analyzing pre-indictment stays can be complicated, but respectfully submit it is straightforward here. If the facts in this case do not justify a pre-indictment stay, where the Justice Department seized Vera's personal cell phone by warrant and refuses to return it (calling it evidence in an ongoing criminal investigation), no case would ever qualify for a pre-indictment stay.

For example, a review of the Receiver's Response shows that the following facts are undisputed, either because the Receiver affirmatively acknowledges them or has failed to contradict them:

- The FBI seized Vera's *personal* cell phone under a search warrant during the raid of Metals.com on September 24, 2020 (Vera Defendants' Appendix, App. 1-2; 210);[1]

- The FBI has refused to return Vera's personal cell phone, stating it is evidence in an ongoing criminal investigation, thereby confirming an ongoing criminal investigation exists (App. 210; Vera Defendants' Motion, p. 4);

- To avoid violating the Federal Rules of Criminal Procedure and the Fourth Amendment to the United States Constitution, a warrant must identify the person or property to be searched and seized. FED. R. CRIM. P. 41(e)(2)(A). It is axiomatic, then, that Vera's property and actions have been *targeted* in this criminal investigation;

- Without explanation, the Receiver is somehow in possession of information the FBI seized during its raid of Metals.com (Receiver's Response, Dkt. # 321, p. 7, ¶ 8), raising the almost irrebuttable inference the Receiver, appointed fewer than 48 hours prior to the FBI raid (Receiver's Response, Dkt. #321, p. 6, ¶s 4-5), is coordinating, collaborating, and exchanging information with the Government;

- The Receiver does not deny that the fraud-based allegations in its FAC, if proven true, would be a violation of one or more of Section 6c and 6d(1) of the CEA, 7 U.S.C. §13a-1 (2018), 7 U.S.C. § 13a-2(1), 7 U.S.C. § 9(1) 2018, CFTC Regulation 180.1(a)(1) – (3), and 17 C.F.R. § 180.1(a)(1) – (3), all of which would subject Vera to criminal penalties;

- Given the claims in the civil case that have parallel criminal penalties, there is a 100% overlap between the facts necessary to obtain a criminal conviction and the facts and circumstances necessary to prove the civil causes of action being pursued by the Receiver.

---

[1] There is confusion about whether the search warrant was issued and executed in 2020, as the Receiver states in its Response; or in 2021, as Vera's counsel is advised. Vera's counsel has made repeated but unsuccessful requests to the Government to obtain a copy of the search warrant, which would reveal the date it was authorized. However, there is no dispute the FBI executed a search warrant and that during the execution, the Bureau confiscated Vera's personal cell phone and other personal belongings.

VERA DEFENDANTS' REPLY – Page 2

Underscoring the criminal overlap of this civil proceeding, during the deposition of Lucas Asher that the Receiver took on February 14, 2025, Mr. Asher refused to answer substantive questions and instead invoked his Fifth Amendment Rights against self-incrimination.[2] Mr. Asher is the founder, owner, and principal of Metals.com. (Receiver's First Amended Complaint ["FAC"], Dkt. #209, p. 64 of 194). Of relevance to this motion, the Receiver's Subpoena specifically targeted documents and information concerning the Vera Defendants.[3] Moreover, while the transcript is not yet available, the undersigned counsel represents that the Receiver's counsel asked Mr. Asher numerous questions in deposition about Vera and his entities, to which Mr. Asher asserted his Fifth Amendment Rights.

Given these events, special circumstances warrant a stay of civil discovery against the Vera Defendants.

## DISCUSSION

**A.    THE RECEIVER'S OBJECTIONS TO G BRYAN BRANNAN'S DECLARATION**

The Receiver's hearsay and foundation objections to Mr. Brannan's Declaration emphasizes the need for a stay. After learning the status of the ongoing criminal investigation, Vera cannot provide sworn testimony himself without potentially waiving his Fifth Amendment Rights, which is exactly what the Receiver (and likely the Government in coordination with the Receiver) are striving to achieve.

---

[2] The transcript of Mr. Asher's deposition is not yet available. However, a true and correct copy of an email from Receiver's counsel advising that Mr. Asher would assert his Fifth Amendment Rights when deposed is attached to this Reply as Exhibit 1.

[3] A true and correct copy of the Receiver's subpoena duces tecum served on Mr. Asher is attached as Exhibit 2 to this Reply.

In any case, the Receiver's hearsay and foundational objections are largely irrelevant. There is no dispute the FBI raided Metals.com and while doing so, seized Vera's personal cell phone, which it now refuses to return. These two facts alone prove the existence of a criminal investigation with Vera as a target and justify this Court entering a stay of the civil case.

To the extent further response is needed, the Receiver's hearsay objection to Mr. Brannan's testimony that he understood the FBI had closed its investigation is improper. That statement is not provided to show the truth of the matter asserted (that the FBI had closed its investigation) but is instead offered to show the state of mind for both Mr. Brannan and the Vera Defendants relative to their belief (accurately held or not) that no threat of criminal prosecution existed until recently. The foundation objection also lacks a proper basis because Mr. Brannan himself stated it was his belief, along with that of the Vera Defendants, the criminal investigation was closed. Mr. Brannan's personal belief the investigation was closed is important relative to whether Mr. Vera should have filed a motion to stay or asserted his Fifth Amendment Rights in responding to the interrogatories the Receiver served over a year ago.

In short, the Vera Defendants did not know there was ongoing criminal investigation until December 5, 2024, when the Assistant United States Attorney assigned to respond to the Vera Defendants' Touhy Request/Subpoena confirmed it. *See* Vera Defendants' Appendix, App. 1-2; 210; see also Vera Defendants' Motion to Quash, Dkt. #306, p. 2 and Exhibits 9 and 10 to the Motion to Quash.

B.   SPECIAL CIRCUMSTANCES EXIST WARRANTING A STAY

Like the Securities Exchange Commission ("SEC"), the Commodities Future Trading Commission ("CFTC") can prosecute simultaneous civil and criminal prosecutions. In special circumstances, a district court should stay one of the proceedings pending completion of the other

to prevent a party from suffering substantial and irreparable prejudice. *AmeriFirst Financial, Inc.*, 2008 WL 866065, at *2.

        1.     **Substantial Overlap Exists**

Until an indictment is returned, the Court is unable to determine with complete certainty the degree of overlap between the Receiver's case, which is built upon the CFTC's underlying lawsuit, and the criminal investigation. However, common sense and reality mock the Receiver's position that the degree of overlap is pure speculation without a returned indictment.

The only possible basis for the ongoing criminal investigation by the FBI and Department of Justice into Metals.com and Vera has to be the criminal components of Section 6c and 6d(1) of the CEA, 7 U.S.C. § 13a-1 (2018), 7 U.S.C. § 13a-2(1), 7 U.S.C. § 9(1) 2018, CFTC Regulation 180.1(a)(1) – (3), and 17 C.F.R. § 180.1(a)(1) – (3). The same factual allegations for those criminal statutes and regulations also form the basis of the civil action by the CFTC in the underlying case against Metals.com; and the fraud-based allegations by the Receiver in its FAC against the Vera Defendants, if proven true, would form the basis for criminal liability under these same statutes and regulations as well.

Further, the Receiver's conclusory argument that there is no evidence Vera is a target of the ongoing criminal investigation is laughable. The FBI seized Vera's personal cell phone, among other things, and the Government has refused to return it because it would interfere with an ongoing criminal investigation. As stated in the Overview section of this Reply, the search warrant had to have identified Vera and his property to avoid violating Vera's Fourth Amendment Rights under the United States Constitution and the Federal Rules of Criminal Procedure. The Receiver has no answer to this, and its silence is simultaneously deafening and speaks volumes.

Not quite finished with its Star Wars-like suspension of reality, the Receiver then tries to convince this Court "these aren't the droids you're looking for," shamelessly claiming the Vera Defendants have been unable to show the Government is using this civil case as a stalking horse to advance its investigation and criminal prosecution. Without explaining why or how, the Receiver has admitted it has information the FBI seized during its raid of Metals.com – that alone, on its face, shows a nearly insurmountable likelihood the Receiver is coordinating, collaborating, and exchanging information with the FBI. The Receiver took responsibility for the company fewer than 48 hours before the FBI executed the search warrant and physically removed the evidence – before the Receiver even had a chance to take an inventory. The Receiver is apparently tone deaf in failing to appreciate the coincidence, that, according to its own pleadings, the FBI raided Metals.com two days after the Receiver was appointed in the underlying case to prosecute claims against the Vera Defendants and other salesman involved with Metals.com. *The Receiver has no way to be in possession of items seized by the FBI, except through coordinating, collaborating, and exchanging information with the Government.*

When weighed objectively, this factor strongly weighs in favor of a stay. *See AmeriFirst Funding, Inc.*, 2008 WL 866065, at *3 (finding overlap in a pre-indictment situation where the criminal charges, if they are forthcoming, will be directed at the same conduct that forms the basis of the SEC's civil lawsuit).

### 2.   Status of the Criminal Case.

The Vera Defendants acknowledge no indictment has been returned yet, and that a stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct. *AmeriFirst Funding, Inc.*, 2008 WL 866065, at *3. However, stays can be and have been granted even if no indictment has been issued. Restated, the fact no indictment is returned

yet does not preclude the granting of a stay. *Id.* (citing *Wehling v. Columbia Broad Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979)).

### 3. The Receiver's Prejudice/Interests Balanced against Vera's Prejudice/Interests

The fourth and fifth *Alcala* factors balance the prejudice/interests of the non-movant and movant. Tellingly, the Receiver had no answer to the Vera Defendants' argument that this case is ancillary to the Underlying Lawsuit of *CFTC v. TMTE, et al.*, No. 20-CV-2910-X, Northern District of Texas, Dallas Division, and that the Receiver recently moved and was granted a resetting of the trial date and extension of scheduling-order deadlines in this case beyond the trial date in the Underlying Case. If the Receiver were truly concerned about lost evidence, fading memories, and the like, it would not have moved to continue the trial date and corresponding extension of the scheduling order deadlines in this case.

Additionally, the Receiver has preserved a substantial number of documents concerning the Receivership Entities, including the files and information seized by the FBI during its raid of Metals.com and Vera. Therefore, the Receiver can preserve the evidence it needs to prosecute the claims in this case. Because Asher has asserted his Fifth Amendment Rights, and Vera will no doubt have to do the same if his deposition is taken before the criminal proceeding is resolved, the Receiver should not be concerned about "fading memories." In this regard, the Receiver could not identify a single witness about whom it is concerned has a "fading memory."

Conversely, Vera has a substantial interest in staying this case to avoid having to choose between asserting his Fifth Amendment Rights, thus creating a negative inference against him and in favor of the Receiver in this case, and making incriminating statements that could be used

against him in a criminal proceeding where his liberty is at stake. *Tuter*, 2013 WL 12449556, at *2. These two factors balanced together weigh in favor of a stay.[4]

Moreover, Mr. Asher has filed a motion for summary judgment and brief in support challenging the jurisdiction of the CFTC's claims against Metals.com in the Underlying Lawsuit (Dkt. #774 in the Underlying Case). The Vera Defendants intend to file a separate Motion to Stay requesting the Court stay this case until a ruling is made on the fundamental jurisdictional questions involving the Underlying Case, which would seem to be a fundamental or threshold question in this case given that, as the Receiver has judicially admitted, it necessarily stands in the shoes of the "Receivership Entities," which includes Metals.com. Receiver's FAC, ¶ 1, n. 1. Restated, and as will be discussed in the Vera Defendants' anticipated Second Motion to Stay, if the CFTC lacks jurisdiction to prosecute its claims against the Receivership Entities in the Underlying Lawsuit, then the Receiver's appointment in the Underlying Lawsuit should have lacked jurisdiction as well. Fruit of a poisonous tree is also poisonous.

Given this threshold question of jurisdiction that the Vera Defendants intend to raise in a subsequent motion, and from the perspective of judicial economy and conserving the Receivership's resources, it would benefit the Receiver and the Court to stay this case until, at a minimum, there is a ruling on Mr. Asher's summary-judgment motion in the Underlying Lawsuit.

---

[4] The Receiver notes on p. 16 of its Response that the Vera Defendants misinterpreted the *Koester* case. Although the Vera Defendants agree the *Koester* opinion affirmed the trial court's decision to deny the stay, the rationale used in *Koester* and its progeny support a stay in this case because the overlap of the criminal investigation and the claims asserted by the Receiver make the effective defense of both impossible.

VERA DEFENDANTS' REPLY – Page 8

### 4. The Court's Interest

As shown in the Vera Defendants' Motion to Stay, a stay can serve the interests of the courts because conducting criminal proceedings with priority advances judicial economy and may increase the prospects of a civil settlement. *Walker v. Wilburn*, Civil Action No 3:313-CV-4896-D, 2015 WL 5873392, at *9 (N.D. Tex. Oct. 5, 2015).

Moreover, with respect to judicial economy, the same arguments relating to Mr. Asher filing a motion for summary judgment on September 24, 2024 in the Underlying Lawsuit challenging the jurisdiction of the CFTC's claims against Metals.com (Dkt. #774 in the Underlying Case) should apply here too.

Given this threshold question of jurisdiction, and from the perspective of judicial economy and conserving the Receivership's resources, it would benefit the Receiver and the Court to stay this case until, at a minimum, there is a ruling on Mr. Asher's summary-judgment motion in the Underlying Lawsuit.

This factor weighs in favor of a stay.

### 5. The Public's Interest

Because the degree of overlap is high between the facts and law supporting the criminal investigation and the Receiver's claims in this case, the public has a high interest in making sure the criminal discovery process is not subverted. *Walker*, 2015 WL 5873392, at *9. Under the circumstances, this factor weights in favor of a stay.

Accordingly, the Vera Defendants respectfully request that their Motion to Stay be granted.

Dated: February 17, 2025                    Respectfully submitted,

                                                /s/ *Michael S. Alfred*
                                                Michael S. Alfred
                                                State Bar No. 24014416
                                                VerisLaw, PLLC
                                                4843 Colleyville Blvd., Suite 251-391
                                                Colleyville, Texas 76034
                                                (817) 678-4121 telephone
                                                (512) 717-7230 fax
                                                malfred@verislaw.net

                                                ***Counsel for Defendants Walter Vera, Verastan Group, LLC and Midwood Capital, LLC***

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on February 17, 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system, which sent a "Notice of Electronic Filing" to all attorneys of record, in accordance with the Federal Rules of Civil Procedure.

                                                /s/ *Michael S. Alfred*
                                                Michael S. Alfred